## HAROLD M. RAKNESS v.
## SWIFT AND COMPANY AND OTHERS.

147 N. W. (2d) 567.

December 30, 1966—No. 40,511.

(Okla.) 388 P. (2d) 490, 492; Annotations, 94 A. L. R. (2d) 1434 and 20 A. L. R. (2d) 80; 19 NCCA (3d) 20.

*Sigal, Savelkoul, Cohen & Sween* and *Donald C. Savelkoul,* for appellant.

*Grannis & Grannis* and *Thomas J. Campbell,* for respondent.

THOMAS GALLAGHER, JUSTICE.

In this action plaintiff, Harold M. Rakness, seeks judgment requiring his employer, Swift and Company, referred to herein as Swift, to certify to the pension board of Swift's employees' pension trust that plaintiff had completed 20 years of continuous service as an employee of Swift; and judgment against all defendants for disability retirement benefits alleged to be due plaintiff under such pension trust because of such continuous service. In addition to Swift, defendants include Bankers Trust Company of New York, trustee under the pension agreement; and the pension board of Swift, responsible for the administration of the pension agreement.

In defense against the action Swift and the pension board alleged that plaintiff had not completed the necessary 20 years of continuous service before becoming disabled and hence was not entitled to be certified as eligible for any retirement benefits under the pension agreement. Swift

also alleged that, in any event, as a prerequisite to the action plaintiff was required to avail himself of the grievance procedures provided for in the master agreement under which he was employed, that he had not done so, and that hence his action was premature.

Subsequently, on motion of Swift the court ordered summary judgment dismissing the action against it on the ground that no cause upon which relief could be granted was stated therein; and on the further ground that the action was premature because plaintiff had not exhausted his remedies by utilizing the grievance procedures provided for in the master agreement between Swift and United Packinghouse Food and Allied Workers, AFL-CIO, covering plaintiff's employment. In a memorandum attached to its order for judgment, the court stated:

"* * * [D]efendant Swift & Company's only obligation under the Pension Trust Agreement is to certify to past and future service. See Art. II, Paragraphs 9 & 11. The Pension Board has the duty from that point on. Where disability is involved, by Article VIII, the Pension Board determines the same after Swift & Company certifies the required years of continuous service.

"Nowhere in the Pension Agreement is continuous service defined. The only place where such service is defined as related to this plaintiff is in Paragraph 76, of the Master Agreement. The only logical conclusion which can be reached, since it is now accepted that pension plans are a legitimate concern of collective bargaining, is *that the Master Agreement definition of continuous service is the definition to be used by Swift & Company,* as far as this employee is concerned, in determining the years of continuous service defendant Swift & Company must certify to the Pension Board.

"Paragraph 58 of the Master Agreement provides for a procedure to be used when differences arise between Swift and an employee pertaining to matters involved in the agreement. The plaintiff did not plead that he had exhausted his remedies under the Master Agreement and in fact admitted he did not, contending that the Master Agreement did not apply to Pension determinations. Under the state of the pleadings, together with the Pension and Master Agreements, the Court is of the opinion that the grievance procedure is applicable here.

"The plaintiff having not exhausted his administrative remedies, the defendant is entitled to have its motion granted. See Rowan vs. McKee, Inc., 262 Minn. 366, 114 N. W. (2d) 692." (Italics supplied.)

The undisputed facts are that plaintiff had completed 19 years and 10 months of continuous service with Swift as of October 18, 1962; that on that date as a result of a heart attack he became disabled and was required to permanently terminate his employment with Swift; that the pension agreement contains a provision that an employee who because of disability is required to terminate his services and who has at that time completed 20 years or more of continuous service is entitled to certain retirement benefits under the pension agreement; that such agreement contains no definition of the meaning of the term "continuous service"; that prior to the commencement of this action plaintiff requested Swift to certify that he was eligible for retirement benefits under the pension agreement; and that in replying to this request Swift wrote him as follows:

"We find that you were employed at the South St. Paul plant from December 12, 1942 to October 18, 1962 when you suffered a heart attack which disabled you. You have been given the full benefit of the sickness and accident payment policy which applied to your situation.

"We cannot, however, certify your service to the Pension Board for action because an employe must be working on or after his 20-year continuous service anniversary date. In your case, you became disabled prior to completing twenty or more years of continuous service and therefore cannot qualify for a disability pension."

It is also undisputed that the pension agreement was adopted for the benefit of all Swift employees including many not covered by the collective bargaining agreement presently involved. It was first executed on August 1, 1916, and subsequently certain supplemental agreements pertaining to it which are not relevant here were adopted. In this agreement, which was voluntarily made by Swift, a trustee was named and Swift transferred certain assets to it to cover pension requirements of all of its employees. None of the employees was a party to the agreement. It provided that:

" 'Trustee' shall mean Bankers Trust Company, a corporation organized under the laws of New York, as Trustee, or its successors in trust.

" 'Pension Board' shall mean the Board elected from time to time by the Board of Directors of the Company to administer this Pension Trust as provided in Article III hereof.

\* \* \* \* \*

" 'Service' shall mean service rendered by an employe in the employ of the Company or of the General Counsel's office or of any of the Company's subsidiary corporations \* \* \*.

\* \* \* \* \*

"The service to be taken into account in computing the amount of an employe's pension shall be the last continuous period of service of the employe certified by the employer to the Pension Board.

\* \* \* \* \*

"Any employe under normal retirement age who shall become disabled, other than temporarily, so as to be unable to perform the duties of any job \* \* \* shall, if such employe has completed twenty (20) years or more of continuous service prior to such disability \* \* \* be entitled to a disability retirement pension to commence upon retirement."

Long subsequent to the execution of the pension agreement Swift and plaintiff's bargaining agent, United Packinghouse Food and Allied Workers, AFL-CIO, entered into a master agreement which covered plaintiff's employment by Swift. Therein no reference was made to the pension agreement or any of its provisions. The two agreements were completely separate in so far as employer-employee relations were concerned. The master agreement contained a provision that should differences arise between the company and the union or employees under the agreement pertaining to matters "involved in this Agreement," such differences were to be handled through certain grievance procedures described therein. It contained a provision defining "continuous service" as follows:

"Continuous service is service unbroken by a discharge, a quit, termination of employment where paid a separation allowance, failure to return to work when recalled in accordance with any applicable seniority pro-

visions, or a lay off for any one period in excess of that set forth in the Table of Allowable Breaks below.

"Absences due to the following causes will not break an employe's continuous service and the period of such absence will be considered as service if the employe returns to work promptly upon being able to do so.

"(1) Absences due to sickness, accident or pregnancy supported by acceptable medical evidence of disability."

On appeal it is plaintiff's contention that an issue of fact as to whether he had 20 years of continuous service with Swift was created by the pleadings; that a fact determination based upon evidence to be submitted was required in connection therewith; and that, since the pension agreement made no reference to grievance procedures, he was entitled to establish the facts entitling him to benefits under the pension agreement without reference to the grievance procedures covered in the master agreement.

■ It is well established that, when an issue of fact is raised by pleadings and a fact determination is necessary before judgment can be ordered, a motion for summary judgment should be denied. Anderson v. Mikel Drilling Co. 257 Minn. 487, 102 N. W. (2d) 293; Juvland v. Plaisance, 255 Minn. 262, 96 N. W. (2d) 537; Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 84 N. W. (2d) 593. Here plaintiff alleged that he had had the essential 20 years or more of continuous service to entitle him to retirement benefits under Swift's pension agreement. Defendants denied this, and an issue having been raised, it would follow that plaintiff was entitled to trial wherein he could present evidence to establish his claim. Such evidence might include the definition of the term "continuous service" as contained in the master agreement under which he was employed, and the sickness and accident policy which covered his disability might have some bearing on the subject. Such factors as custom and practice in the industry; the interpretations ordinarily given to the term "continuous service" when disability becomes involved; and possibly factors relating to waiver or estoppel might be found to have a bearing in the matter. Of course, defendants would be entitled to submit any evidence available to them to establish that

plaintiff's service was not continuous for the 20-year period required to qualify him for pension benefits. Under all such circumstances, we feel that the court should not have granted summary judgment on defendant Swift's motion.

We are not in agreement with the conclusion that plaintiff's action was premature because he had not resorted to grievance procedures provided for in the master agreement under which he was employed. As previously stated the pension agreement was adopted and became effective long before the master agreement went into effect. It applied to all Swift's employees, including many not covered by this master agreement. It made no reference to grievance procedures, either by express provision or otherwise, and it would follow that plaintiff was not required to resort to such procedures before bringing an action to enforce his rights under it. This seems particularly true in view of the provision in the master agreement that such grievance procedures were required to be followed only in matters "involved in this Agreement," and there being no provision with respect to pensions therein. And while the master agreement certainly would have some bearing on the meaning of the term "continuous service," as applied to plaintiff, this would not mean that the grievance procedures would first have to be resorted to before reference to this definition could be made in an action arising under the pension trust.

The judgment appealed from is reversed.