Margaret S. HAYS, Plaintiff,

v.

Robert FINCH, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 69-231.

United States District Court
W. D. Pennsylvania.

Nov. 17, 1969.

Edwin J. Martin, Pittsburgh, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., by Douglas McBroom, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

This is an action brought pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for review of the decision of the Appeals Council, Social Security Administration, (1) that plaintiff's late husband, Gordon Lawrence Hays, was not disabled before July 21, 1964, and (2) that adjustments in connection with certain overpayments to plaintiff should not be waived. With his answer to plaintiff's complaint, defendant filed a certified copy of the transcript of the record of the proceedings before the Social Security Administration in compliance with § 205(g) of the Act, *supra*, and subsequently cross motions for summary judgment were filed by the parties.

Section 205(g), *supra*, provides in its pertinent part as follows:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

Under § 205(g) and under the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., we are limited to "ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact." Goldman v. Folsom, 246 F.2d 776, 778 (3d Cir. 1957); Ferenz v. Folsom, 237 F.2d 46 (3d Cir. 1956). "Our judicial duty therefore is to satisfy ourselves that the agency determination has warrant in the record, viewing that record as a whole, and a reasonable basis in law. [Citations omitted.]" Boyd v. Folsom, 257 F.2d 778, 781 (3d Cir. 1958). See also, Braun v. Ribicoff, 292 F.2d 354, 357 (3d Cir. 1961).

## I. DATE OF ONSET OF DISABILITY

Plaintiff filed an application under §§ 216(i) and 223 of the Act, as amended, 42 U.S.C. §§ 416(i) and 423, for establishment of a period of disability and for disability insurance benefits in connection with the earnings record of Mr. Hays on October 14, 1964 alleging that he became disabled in November 1962. Thereafter, on October 29, 1964, the

Revenue Agent at Mayview State Hospital filed a separate application alleging that Mr. Hays became disabled on July 21, 1964. Applications for wife's and children's benefits based on the wage earner's disability were also filed. By initial and reconsidered decisions the Administration found that Mr. Hays was not disabled within the meaning of the Act. No further action on these applications was taken.

On June 8, 1966, Mrs. Hays filed another application for disability benefits on behalf of Mr. Hays. The Administration having learned that Mr. Hays died on July 1, 1966 as a result of cardiac heart failure due to coronary artery insufficiency and arteriosclerotic cardiovascular disease (R. p. 155), found that he was under a disability from July 1, 1965 to the date of his death. Plaintiff then requested reconsideration, contending that the disability began in 1962. This contention was rejected by the Division of Reconsideration, Bureau of Disability Insurance, and plaintiff requested a hearing with the Bureau of Hearings and Appeals. At the hearing Rev. Ernest E. Logan and plaintiff testified in support of an onset date of November, 1962. Thereafter, the hearing examiner found that:

"(6) The evidence fails to establish, after considering section 404.-1519(c) (2) (iii), that wage earner's impairments prevented him from engaging in substantial gainful activity, before July 1, 1965, for any continuous period which lasted or could be expected to last at least twelve continuous months." (R. p. 33).

The Appeals Council modified this decision, and found an onset date of July 21, 1964 which was the date of Mr. Hays' admission to Mayview State Hospital. This decision was based on a finding of a disabling mental condition rather than on the heart condition relied on at the lower administrative levels.

In our opinion, the final decision of the Secretary that the wage earner was not disabled prior to July 21, 1964, is based upon substantial evidence of record, and therefore it must be affirmed.

The burden of proving a disability is initially on the claimant. Henry v. Gardner, 381 F.2d 191 (6th Cir. 1967), cert. denied 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 (1967). The evidence advanced in support of establishment of a disability prior to July 21, 1964 did not meet this burden.

The wage earner was born on December 8, 1914, went to the 10th grade in school and spent most of his working life as a salesman. He began having difficulties in his work and personal life in 1955 because of excessive use of alcohol. On September 2, 1955, his employment as a salesman for the A. E. Staley Manufacturing Company was terminated. The reason given was " 'unsatisfactory work'." (R. p. 288). Dr. McWilliams reported that on October 25, 1956, the wage earner had "severe nervousness from drinking too much alcohol." (R. p. 285). He was admitted to St. Francis Hospital on February 1, 1959. He was diagnosed as a routine alcoholic with a fair prognosis and discharged on February 5, 1959. Mr. Hays was again hospitalized from April 28, 1961 to May 3, 1961 at Mercy Hospital of Johnstown, and his condition was described as "Acute Alcoholism". (R. p. 246). He was put under the supervision of Alcoholics Anonymous and was sent to Chit Chat Farms, a rehabilitation center. A job was secured for him at the Galen Hall Hotel, Wernersville, Pennsylvania in 1962, but he either wandered off or was dismissed because of unusual behavior in November of that year. The manager was of the opinion that he was "mentally deranged" at that time. (R. p. 284). At about the same time, Rev. Logan became frightened of him and noted that he was violent and that he thought he was St. Peter or in some way associated with St. Peter. In 1963, Rev. Logan testified, Mr. Hays appeared to be suffering from a nervous breakdown. In April and May, 1964, Dr. Witherspoon noted that Mr. Hays appeared to have "some degree of mental confusion * *."

(R. p. 248). From 1960 through 1964, his employment was sporadic and unsubstantial.

■ Under the Social Security Act the term "disability" means:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." 42 U.S.C. § 423 (d) (1) (A).

Although a mental disorder can be the basis of a disability within the meaning of the Social Security Act, Dean v. Gardner, 393 F.2d 327 (9th Cir. 1968); Whitt v. Gardner, 389 F.2d 906 (6th Cir. 1968); Rosay v. Gardner, 247 F. Supp. 603 (S.D.Cal.1965), and although the fact that the cause of a mental disorder is chronic alcoholism is not a reason for denying disability insurance benefits, Lewis v. Celebrezze, 359 F.2d 398, 400 (4th Cir. 1966), the existence of chronic alcoholism is not in itself sufficient to establish a disability. Brasher v. Celebrezze, 340 F.2d 413 (8th Cir. 1965); Echols v. Gardner, 276 F.Supp. 499 (S. D.Tex.1967).

It is further noted that the only competent medical evidence of a mental disorder prior to July 21, 1964, is Dr. Witherspoon's indication of "some degree of mental confusion * * *." (R. p. 248). However, this general practitioner did not make a diagnosis. The other evidence noted above relating to a mental impairment before July 21, 1964 consists of the observations of laymen.

In view of the character of the evidence submitted on the question of a mental impairment before the onset date set by the Secretary, his finding that no medically determinable mental impairment had been established before that date was not erroneous.

Nor was the ruling with respect to the wage earner's high blood pressure and cardiac condition lacking in a basis in the record. In May, 1955 a blood pressure reading of 184/120 was taken by Dr. McWilliams (R. p. 285). In April and May, 1964, nine years later, the wage earner's blood pressure was 190/100 (R. p. 248). The report of the Mercy Hospital of Johnstown contains the following notation concerning Mr. Hays' 1961 hospitalization:

"Electocardiogram: [sic]—Conclusion:—There is some indication of a posterior myocardial infarct at least there is some evidence of coronary insufficiency. [sic] A later cardiogram and clinical history must be relied upon for a diagnosis." (R. p. 246).

A heart impairment was also indicated in May, 1964, by some police officers. This evidence was before the Appeals Council, and it was properly held to be insufficient to establish an earlier onset date of disability. There was no indication of the seriousness of the heart condition or of whether the hypertension was a continuing condition; nor was there any showing at the administrative level that the wage earner's ability to engage in any substantial gainful activity was adversely affected by these conditions alone or in combination prior to July 21, 1964.

Rather, the substantial evidence points to the conclusion that before July 21, 1964, the only impairment to Mr. Hays' ability to engage in substantial gainful employment resulted from his alcoholism.

■ Plaintiff contends that the Secretary was arbitrary in determining that the disability began on July 21, 1964, the day on which Mr. Hays was admitted to Mayview State Hospital. She argues that there was no evidence of any impairment which began to afflict Mr. Hays on that date. The record does show, however, that during his confinement at Mayview, he hallucinated and became destructive and delusional, he developed pseudo-Parkinson symptoms (body forward, arms down and dragging) and was diagnosed as schizophrenic. (R. p. 254). In a case such as this, where it is difficult to determine an exact date upon which a person became

disabled due to a mental impairment, we do not think it is error for the Secretary to conclude that the date of onset is the date of admission to a mental hospital.[1]

Plaintiff filed with her motion for summary judgment additional evidence relating to Mr. Hays' confinement at Mayview and urged the court to remand this aspect of the case to the Secretary for additional consideration. We are permitted to remand, however, only where the determination of the Secretary is not supported by substantial evidence. 42 U.S.C. § 205(g). Furthermore, the evidence presented is not probative of any disability under the Social Security Act.

For the reasons heretofore stated, the decision of the Secretary that the wage earner was not disabled prior to July 21, 1964, will be affirmed.

## II. WAIVER OF ADJUSTMENT

After her husband died on July 1, 1966, plaintiff was notified that her applications for disability insurance benefits for her husband, herself and her children were granted. She was also notified that applications for the lump sum death benefit and for widow's and children's benefits were approved. As a result of these latter awards, Mrs. Hays became entitled, *inter alia*, to $255 (lump sum death benefit), $407.40 (widow's benefits for July, 1966 through January, 1967 at $58.20 per month) and $1222.20 (children's benefits for the same period at $174.60 per month). She received $3769.20 which was twice the amount to which she was entitled. On March 28, 1967, the Administration learned that the overpayments had been made, and it was determined that adjustments suspending subsequent payments to plaintiff should be made in order that the Administration might recover the overpayments totalling $1884.-60 being $662.40 to plaintiff and $1222.-20 to plaintiff on behalf of her three children.[2]

On May 18, 1967, plaintiff submitted a written statement in opposition to the adjustments, but the adjustments were made, and payments of Social Security Benefits to plaintiff and her children were suspended.[3] Plaintiff's request for a hearing on the issue of the date of onset of Mr. Hays' disability was granted, and the scope of the hearing was expanded to include the question of whether the adjustments should be waived pursuant to § 204(b) of the Act. The hearing examiner determined that the adjustments should not be waived, and the Appeals Council affirmed.

Section 204 of the Act, as amended, provides, *inter alia:*

"(a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

"(1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled * * *

" * * *

"(b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by

---

1. "Clearly, court-imposed hospitalization or incarceration is not, of itself, the kind of disability contemplated by the statute. If, however, the confinement is occasioned 'by reason of any medically determinable physical or mental impairment', etc., there is no reason why the statutory disability may not be established if the other prescribed conditions are met." Marion v. Gardner, 359 F.2d 175, 182 (8th Cir. 1966).

2. Although the record contains indications that additional overpayments to plaintiff were made (R. pp. 162–165, 176–177, 233, 243), the Administration did not make any additional adjustments.

3. No request for reconsideration of the decision to make adjustments were submitted by plaintiff.

the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404.

The hearing examiner, whose findings were adopted by the Appeals Council, found that:

"(8) Claimant was overpaid in the amounts of $662.40 plus $1222.20 by reason of her acceptance of duplicate checks which she knew or could have been expected to know were incorrect.

"(9) Claimant was not without fault in the acceptance of these checks." (R. p. 33).

■ It is our opinion that the finding that plaintiff was not without fault is not supported by substantial evidence. On the contrary, the material proof extracted by the hearing examiner during his cross examination of the unrepresented plaintiff points to the conclusion that plaintiff was without fault in receiving the overpayments. On December 8, 1966, the Administration sent plaintiff a notice of award of the $255 lump sum death benefit. She received a check for $255 a week or ten days from the day she received the notice of award. More than a month after the first notice was sent the Administration sent plaintiff a certificate of award in the amount of $604.-20. It was stated on the certificate that the amount included the lump sum death benefit. Plaintiff thereafter received a check for $604.20. She was not aware that she was receiving the lump sum death benefit twice, and it did not occur to her to inquire into the matter.[4]

Plaintiff had six applications for Social Security benefits in process at the time she received the overpayments. She had been notified in September that her various applications would be granted and that she would begin receiving checks. Although plaintiff was in dire financial need no moneys were forthcoming until early December, 1966. Plaintiff also received several notices of underpayment of money due her late husband's estate during this period. She had made numerous trips to the Administration office, and when she received money from the Administration she did not concern herself with determining whether the payment was in connection with one application or another; she assumed that the Administration knew what it was doing.

Plaintiff also testified that she did not know that disability benefits were payable only for a period beginning six months after the onset date of Mr. Hays' disability.[5] There is additional evidence that at the times involved here, plaintiff expected to receive additional disability benefits because she was confident that an onset date of November, 1962 would be established.

Against this background, the hearing examiner concluded that because plaintiff received a notice mentioning the lump sum death benefit a second time, more than a month after the first notice of this award and in an award for a different amount of money she was at fault in accepting the larger amount of money. This finding might be appropriate if plaintiff were an accountant, but there is no showing of her educational level.[6] In the circumstances, we find that plaintiff has sustained her

---

4. The hearing examiner also questioned plaintiff at length regarding overpayments with regard to which no adjustments were made (see footnote 2, *supra*) and received similar testimony of plaintiff's innocence at the time she received them. Although this testimony occupies a large part of the hearing transcript it has no bearing on the question of plaintiff's fault when she received the payments at issue in this action.

5. See: 42 U.S.C. § 423(c) (3).

6. Cf: 20 C.F.R. § 404.507 which states, *inter alia*:

"In determining whether an individual is at fault, the Administration will consider all pertinent circumstances, including his age, intelligence, education, and physical and mental condition."

burden of proving that she was without fault in receiving the overpayments and that the Secretary's decision that she "was not without fault" is not supported by substantial evidence and must be reversed.

██ Since there is no evidence on the factual issue of whether the suspension of benefit payments to plaintiff and her children either defeated the purposes of Title II of the Act or was against equity and good conscience, the case will be remanded for the taking of additional testimony on this issue. Counsel argues that plaintiff's statement at the hearing that she deposited certain checks in her bank account shows that suspension of benefit payments did not defeat the purposes of Title II. On remand, we think that inquiry regarding this issue should be directed to plaintiff's financial condition at the times when benefit payments were suspended and not at the times the overpayment checks were received.

An appropriate order will be entered.