## HAROLD M. RAKNESS v. SWIFT & COMPANY AND OTHERS.

175 N. W. (2d) 429.

January 30, 1970—No. 41634.

*Sigal, Savelkoul, Cohen, Sween & Salazar,* for appellant.

*Grannis & Grannis* and *Thomas J. Campbell,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

Appeal from an order of the district court granting defendants judgment notwithstanding a verdict for plaintiff and further providing that, if said order be set aside or vacated, a new trial be granted. The issue presented is whether plaintiff-employee,

Harold M. Rakness, who began working for defendant Swift & Company, December 10, 1942, and suffered a permanently disabling heart attack October 18, 1962, but continued in the status of an employee until sometime during 1963 or 1964, had completed 20 years or more of continuous service prior to such disability so as to qualify him for pension benefits under a pension trust established by the employer.

This matter was originally before us in a former appeal, Rakness v. Swift & Co. 275 Minn. 451, 147 N. W. (2d) 567, in which we reversed the trial court's holding that the plaintiff's action to compel a certification for pension benefits stated no ground upon which relief could be granted and was premature because the plaintiff had not exhausted his remedies by utilizing grievance procedures provided for in a union agreement. We held that where an employee alleged that he had performed 20 years or more of continuous service necessary to entitle him to retirement benefits under the employer's pension agreement, and where the employer denied such performance, a fact issue arose as to whether the employee had 20 years of continuous service with the employer. In remanding the matter to the district court, we said that the plaintiff should be entitled to a trial wherein he could present evidence and establish his claim, and we observed (275 Minn. 456, 147 N. W. [2d] 570):

"* * * Such evidence might include the definition of the term 'continuous service' as contained in the master agreement under which he was employed, and the sickness and accident policy which covered his disability might have some bearing on the subject. Such factors as custom and practice in the industry; the interpretations ordinarily given to the term 'continuous service' when disability becomes involved; and possibly factors relating to waiver or estoppel might be found to have a bearing in the matter. Of course, defendants would be entitled to submit any evidence available to them to establish that plaintiff's service

was not continuous for the 20-year period required to qualify him for pension benefits."[1]

From the record on retrial, it appears that the employee began work for the employer on December 10, 1942, and on October 18, 1962, while working, suffered a coronary infarction. He was

[1] The pertinent provision of the pension trust is Article VIII, which relates to permanent disability: "Any employe under normal retirement age who shall become disabled, other than temporarily, so as to be unable to perform the duties of any job available for him at the unit where employed, as determined in the sole discretion of the Pension Board, shall, if such employe has completed twenty (20) years or more of continuous service prior to such disability and shall not be excluded from the benefits under the provisions of Paragraph 5 of Article V hereof, be entitled to a disability retirement pension to commence upon retirement."

Paragraph 74 of the master agreement covering terms of employment provides as follows: "Continuous service is service unbroken by a discharge, a quit, termination of employment where paid a separation allowance, failure to return to work when recalled in accordance with any applicable seniority provisions, or a layoff for any one period in excess of that set forth in the Table of Allowable Breaks below.

"Absences due to the following causes will not break an employe's continuous service and the period of such absence will be considered as service if the employe returns to work promptly upon being able to do so.

"(1)   Absences due to sickness, accident or pregnancy supported by acceptable medical evidence of disability.

"(2)   Miscellaneous approved absences such as those due to vacation, jury service, death in the family, or quarantine.

"(3)   Absences while in the Armed Forces by an employe reinstated under the Company's Military Policy or time spent in the Armed Forces of the United States while on leave of absence granted for such purpose.

"(4)   Authorized leave of absence up to a maximum of three months. An authorized leave in excess of this maximum will not break the continuity of the employe's service but service credit will not be allowed for such excess time.

"(5)   Layoffs due to reduction in working force or other causes beyond the employe's control, provided he returns to work promptly

hospitalized and never returned to work. He was discharged from the hospital on December 2, 1962, with a diagnosis of coronary arteriosclerotic disease. He was rehospitalized on July 24, 1963, again with heart symptoms, and discharged on July 28, 1963. When his first heart attack occurred, the attending

when his services are again desired by the Company and the layoff is for a period not exceeding that listed in the Table of Allowable Breaks.

"TABLE OF ALLOWABLE BREAKS

| "Continuous Service at Time of Layoff | Duration of Layoff Which Will Not Break Service |
|---|---|
| "Less than 1 year | 60 calendar days |
| 1 year to 5 years | 90 calendar days |
| 5 years to 15 years | 240 calendar days |
| Over 15 years | 365 calendar days" |

The company personnel manual contains the following provisions relating to calculation of continuous service:

"Continuous service is service unbroken by a discharge, a quit, termination of employment when a separation allowance is paid, failure to return to work when recalled in accordance with any applicable seniority provisions, or a layoff for any one period in excess of that set forth on the Table of Allowable Breaks below.

"Absences due to the following causes will not break an employe's continuous service and the period of such absence will be considered as service if the employe returns to work promptly upon being able to do so.

"1. Absences due to sickness, accident or pregnancy supported by acceptable medical evidence of disability.

"2. Miscellaneous approved absences such as those due to vacation, jury service, death in the family, or quarantine.

"3. Absences while in the armed forces by an employe reinstated under the Company's military policy or time spent in the armed forces of the United States or Canada while on leave of absence granted for such purpose.

"4. Authorized leave of absence up to a maximum of three months. An authorized leave in excess of this maximum will not break the continuity of the employe's service but service credit will not be allowed for such excess time.

"5. Layoffs due to reduction in working force or other causes beyond the employe's control, provided he returns to work promptly

physician was of the opinion that the employee would be able to return to work in 4 months. As time went by, his physician continued to report his condition to the employer. On December 12, 1962, March 11, 1963, in April and June 1963, and on July 15, 1963, he indicated that the employee would return to work at later dates. These estimates were submitted to the employer on its medical forms. In response to the employer's request on April 7, 1964, for information as to the availability of the employee for employment, the doctor indicated, "Limited capacity to June 1964." The attending physician finally expressed the view that the employee's condition had reached the point where he would not be able to do anything and that he was permanently disabled. The medical records of the employer contained a notation by Dr. McCornack, the company physician, dated February 25, 1964: "Any exertion around the house causes pain. Minnesota Heart Association recommended he get social security. Is permanently disabled."

The evidence does not disclose that company records indicate the date the employee was discharged or separated from his employment. The record establishes that benefits because of illness were paid to the employee, as required under the company's agreement with the union, for 28 weeks after the heart attack and well beyond the 20th anniversary of his employment. The employee continued under the company hospitalization program, continued to receive various benefits under company programs including a group life policy, and continued to visit and utilize

when his services are again desired by the company and the layoff is for a period not exceeding that listed in the Table of Allowable Breaks.

"TABLE OF ALLOWABLE BREAKS

| "CONTINUOUS SERVICE AT TIME OF LAYOFF | DURATION OF LAYOFF WHICH WILL NOT BREAK SERVICE |
|---|---|
| "Less than 1 year | 60 calendar days |
| 1 year to 5 years | 90 calendar days |
| 5 years to 15 years | 240 calendar days |
| Over 15 years | 365 calendar days" |

the company medical office. In February 1963, the company gave him a pin or insignia indicating that he was classified among employees having 20 years of continuous employment. He began to receive social security benefits in May 1963 and veterans' administration benefits in August of the same year. The company doctor noted permanent disability on February 25, 1964.

While the company, its pension board, and the trustee of the pension fund would concede these facts, they claim, nevertheless, that the employee should be denied pension benefits because he was not in "continuous service" for a 20-year period prior to the disability. It is their contention that, even though the relationship of employer and employee existed long after he ceased actual work, such subsequent relationship should be disregarded, and the date of termination of his service must relate back to the date of the original illness on October 18, 1962. The employer concedes that absence from work due to sickness will not break continuous service "if the employe returns to work promptly upon being able to do so." But the defendants contend that since the employee never returned after October 18, 1962, his service terminated on that date.

As we pointed out in our original decision, Rakness v. Swift & Co. *supra,* the question of whether the employee's continuous service terminated at the time of his illness on October 18, 1962, was a question of fact for the jury. Without objection from the employer, the court submitted to the jury the following special interrogatory: "On what date did Plaintiff, Harold M. Rakness, become permanently disabled?" The jury, apparently relying on the records of the defendant company and taking the company physician at his word, as indicated in the record, answered, "February 25, 1964." The trial court incorporated the jury's answer in its findings of fact and conclusions of law, but on a subsequent motion for judgment notwithstanding the verdict, for amended findings, or for a new trial, concluded that the issue should have been disposed of on a different theory. In a memorandum, he called attention to the provision of the trust agreement which

indicated that retirement benefits should be determined in the "sole discretion" of the pension board [2] and the provision that its determination should not be disturbed except in case of "gross negligence, bad faith or willful default." [3]

It seems to us that the trial court overlooked our holding in the original appeal and the theory upon which the issue was submitted to the jury on retrial. If the arbitrary decision of the pension board is final, there would have been no point in returning the case for retrial for the purpose of determining the fact question as to continuous employment. It seems to us that by virtue of the theory under which this case was tried, the issue of whether the employee had performed continuous service which would entitle him to pension benefits was one of fact within the province of the jury to decide on the basis of the evidence submitted. On the basis of the evidence, it is unquestioned that the employee remained in the status of an employee well beyond the 20th anniversary of his employment. In view of all the other factors mentioned, which indicate that the employee shared in the common relationship of other employees and for a considerable time after his heart attack remained on the list of those subject not to reemployment but to temporary absence because of illness, there was ample evidence for the jury to decide the issue which the trial court properly submitted to them.

It is accordingly our view that the trial court was in error in granting judgment notwithstanding the verdict. Ford v. Stevens, 280 Minn. 16, 157 N. W. (2d) 510.

---

[2] Quoted in footnote 1, *supra*.

[3] Article III ("Administration of Trust"), subd. 7, reads as follows: "All decisions of the Pension Board as to the facts of any case and the meaning and intent of any provision in this Trust or of its application to any case shall be final and conclusive. No member of the Pension Board shall be liable to any employe or any person claiming under any employe or to the Company by reason of the exercise of his discretion hereunder, except in case of *gross negligence, bad faith or willful default*."

Reversed with directions to enter judgment upon the verdict. McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. (2d) 488.