ELL-KAY FOSS v. KENNETH MAHAL AND ANOTHER.

230 N. W. 2d 604.

June 13, 1975—No. 45219.

*Maun, Hazel, Green, Hayes, Simon & Aretz* and *Geoffrey P. Jarpe,* for appellants.

*Moore, Costello & Hart* and *Larry A. Hanson,* for respondent.

Heard before Todd, Scott, and Knutson, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from a judgment of the Ramsey County District Court entered pursuant to a jury verdict. The action was commenced by plaintiff, for the recovery of amounts allocated to the profit-sharing plan of Ellerbe Architects, Inc., in his name and declared by the trustees to have been forfeited following his termination of employment on the grounds of insubordination and gross inefficiency. The jury returned a special verdict finding that plaintiff was neither insubordinate nor grossly inefficient in his duties as employee and that he was entitled to 100 percent of the amount allocated to him under the profit-sharing plan. We affirm.

Two issues are presented for our determination:

1. Did the court err in submitting by special verdict the questions of whether plaintiff's conduct constituted insubordination and gross inefficiency, rather than submitting only interroga-

tories about whether the trustees' decision was made arbitrarily, capriciously, or in bad faith?

2. Is there sufficient evidence to sustain the jury verdict that plaintiff was entitled to 100 percent of his pension benefits upon termination of employment?

Plaintiff, Ell-Kay Foss, had been employed at Ellerbe Architects, Inc., as a mechanical draftsman for a period from 1961 to 1963 and again from 1965 to March 23, 1972, when his employment was terminated. On February 22, 1972, plaintiff notified John A. Rudberg, department head of mechanical engineering, that he and his family had decided to move by June 1, 1972, to northern Minnesota to operate a general store. He testified that he informed Rudberg at that time to allow the firm to find a suitable replacement, but said also that he wished to remain on the staff until that date to allow his children to finish the school year.

Apparently Rudberg attempted to discourage the move and further indicated to plaintiff that in the past persons with an intent to terminate employment had demonstrated a tendency to be less efficient or productive. The record before us indicates that there were no complaints regarding plaintiff's employment performance prior to March 15, 1972. Following that time, complaints were made claiming that plaintiff made no progress in his mechanical drawings from March 14 to March 23, and that he spent most of his working time engaged in discussions with fellow employees and carrying on extensive telephone conversations of an allegedly personal nature. A substantial portion of the record is devoted to the claimed lack of productivity of plaintiff's work during this period.

Plaintiff, on the other hand, contends that his work had been satisfactory and that he was aware of no complaints before March 13, 1972. He stated that he was at home ill on March 14, 1972, despite defendants' allegation that plaintiff was not reporting to work. An interoffice conference, at which plaintiff and several supervisors were present, was held on March 15, 1972,

to discuss complaints that plaintiff's work on an assigned project had not been productive. Plaintiff allegedly stated that he intended to finish the project pursuant to the company's deadline and noted that his work for the company had always been timely.

Plaintiff was fired on March 23, 1972. Ronald A. Sorensen, the personnel director, indicated that he was under the impression that the supervisors had made several attempts to urge plaintiff to work and that he had refused. Plaintiff, on the other hand, stated that the first and only complaints of which he was aware were those mentioned at the March 15 meeting, and that nothing further was said until his involuntary termination on March 23.

Plaintiff was cognizant of his right to participate in the firm's profit-sharing plan. Article XI of the profit-sharing plan provides in part:

"1) In the event that in the judgment of the Trustees the termination of employment of any member is due to insubordination, gross inefficiency, proved dishonesty, or commission of a misdemeanor or felony, then, and in such event, such member shall forfeit his right to participate in the Trust Fund.

'2) Upon the voluntary discontinuance by any member of his employment, otherwise than on account of sickness, disability or retirement, he shall be entitled to receive the amount of his credit on the December 31st last preceding the discontinuance as determined in accordance with the provisions of this Plan, less the following respective proportions of such credits.

\* \* \* \* \*

"If such discontinuance of employment shall be within seven (7) years from the date on which he became a member, then forty percent (40%) of his credit shall be forfeited."

Plaintiff subsequently made application for his benefits under the profit-sharing plan. The personnel form, stating the reason for plaintiff's leaving the company, read: "Terminated by Dept. Mgr. for insubordination and gross inefficiency." Plaintiff was

informed by a letter from Sorensen to his northern Minnesota address that the trustees had declared plaintiff's rights to the profit-sharing proceeds forfeited. This action was commenced to recover those proceeds.

The jury found that the acts and conduct of plaintiff did not constitute gross inefficiency nor insubordination, and that he was entitled to 100 percent of his proceeds of the profit-sharing plan in the amount of $6,241.32. The trial court further awarded plaintiff his costs and disbursements.

## I.

Defendants contend that the court and jury may not review a decision of the trustees that the employee was discharged for gross inefficiency and insubordination, and that the only permissible review is whether such a decision was made "arbitrarily, capriciously or in bad faith." Defendants cite Lano v. Rochester Germicide Co. 261 Minn. 556, 113 N. W. 2d 460 (1962), in support of their contention. This contention is based upon the language from Article IV of the profit-sharing agreement which states:

"5.   The decision of the Trustees in matters within their jurisdiction shall be final, binding and conclusive upon the Firm, and upon each staff member, beneficiary and every other person or party interested or concerned."

In Lano, this court faced an issue concerning a determination, made by an advisory committee appointed by the Rochester Germicide Company, to defer distribution of contributions to a profit-sharing pension plan until the employee reached retirement age. Included in the plan was a clause, as in the instant case, that decisions of the committee were binding and conclusive. The lower court upheld the decision of the advisory committee on the basis that there was no showing of bad faith, discrimination, or arbitrariness. This court affirmed, stating (261 Minn. 563, 113 N. W. 2d 465) :

"All the cases which have been called to our attention take the

position that great latitude is tolerated in the exercise of judgment by pension-fund trustees. It is not our function to determine whether the committee's disposition is one we would have selected. It has been held that the failure to accord a hearing is not in itself evidence of bad faith. [Citations omitted.] Where the pension plan provides that the committee's decision is conclusive, it has been said that fraud or bad faith must be proved by 'overwhelming' evidence. * * *

* * * * *

"* * * All of the cases dealing with the subject hold that where a pension plan is not a part of a contract of employment, and the employee makes no contributions to it, the company may retain broad discretion in *administering the fund* since the benefits are in the nature of gratuities. The disposition of such funds is limited only by the terms of the trust instrument. Under these circumstances the courts have refused to interfere unless the aggrieved party has made a strong showing that the company acted arbitrarily, capriciously, fraudulently, or in bad faith." (Italics supplied.)

Plaintiff suggests rather that the controlling principle is that found in Rakness v. Swift & Co. 275 Minn. 451, 147 N. W. 2d 567 (1966), where this court in reversing a summary judgment for the employer concluded that the question as to whether employee had performed the necessary continuous service with the employer to entitle employee to pension benefits, was properly a question of fact for the jury. The opinion makes no mention of the standard of review discussed in Lano, for the possible reason that factual distinctions existed to remove the Rakness decision from control by Lano. We concluded that the plaintiff could introduce evidence to establish his claim.

After the trial in the Rakness case, the trial court granted defendant's motion for judgment notwithstanding the verdict. On the second appeal, we again reversed the trial court. Rakness v. Swift & Co. 286 Minn. 74, 175 N. W. 2d 429 (1970). We stated:

"It seems to us that the trial court overlooked our holding in the original appeal and the theory upon which the issue was submitted to the jury on retrial. If the arbitrary decision of the pension board is final, there would have been no point in returning the case for retrial for the purpose of determining the fact question as to continuous employment. It seems to us that by virtue of the theory under which this case was tried, the issue of whether the employee had performed continuous service which would entitle him to pension benefits was one of fact within the province of the jury to decide on the basis of the evidence submitted. On the basis of the evidence, it is unquestioned that the employee remained in the status of an employee well beyond the 20th anniversary of his employment. In view of all the other factors mentioned, which indicate that the employee shared in the common relationship of other employees and for a considerable time after his heart attack remained on the list of those subject not to reemployment but to temporary absence because of illness, there was ample evidence for the jury to decide the issue which the trial court properly submitted to them." 286 Minn. 80, 175 N. W. 2d 432.

Plaintiff contends that there is a persuasive difference between our decision and its intended result in Lano and the principles espoused in Rakness. We must agree that there is a strong factual distinction between Lano and the instant case in that in this case the board of trustees has attempted, through the exercise of discretion, to remove completely any right to profit sharing by plaintiff, while in Lano the committee merely delayed the distribution of the funds to the employee and did not act in any manner to work a forfeiture. Strictly construing the italicized language in that portion of Lano previously quoted, it must be concluded that "administering the fund" is wholly different from forfeiting any right, for administering presupposes a right in existence and merely purports to create methods of distribution and other managerial functions. If we were to apply Lano to the present case, the obvious result would be to allow any

managerial decision to stand, absent clear and convincing evidence that such decision was arbitrary or in bad faith. We therefore must conclude from the facts of the case at hand, where all profit-sharing rights were declared forfeited, that the jury must be allowed to consider not only the propriety, but also the evidentiary basis, of the board's decision. In practice, distinction between the two theories of trial may only be minimal. A finding that plaintiff was neither inefficient nor insubordinate may very well be said to be tantamount to a finding, under some circumstances, that the board's decision was arbitrary, capricious, or made in bad faith. The decisive point upon which we rely is that in Lano these elements were not found, but in Rakness and the present case they, in effect, were. We therefore hold that to give credence to all such board actions would critically limit review to evidence of bad faith and capriciousness, and would perhaps close the door upon potentially inaccurate findings. Such a limitation is not proper in light of the possibilities of error such as those presented herein. Therefore, in a situation in which the board effects a complete forfeiture of an employee's pension or profit-sharing rights, the jury may consider the propriety of this board action.

## II.

There is evidence that had plaintiff voluntarily left his employment on June 1, 1972, as contemplated and as he had given notice to the employer, he would be entitled to only 60 percent of his benefits. The alternative incorporated into the agreement provided that if plaintiff was involuntarily terminated for reasons other than gross inefficiency and insubordination, he was entitled to 100 percent of the benefits.

The percentage of the benefits to which plaintiff was entitled was a question for jury determination. The jury found that the involuntary termination entitled plaintiff to 100 percent of the benefits. Although it is clear that from the evidence the jury could easily have concluded that since Foss was intending to terminate voluntarily, he should receive 60 percent of the bene-

fits, the jury specifically found that he was entitled to full pension benefits. This court has always accorded great deference to jury verdicts and as sufficient evidence exists to support the verdict, it shall stand.

The judgment is therefore affirmed in its entirety.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.