Robert L. MELIN, Appellant,

v.

NORTHWESTERN BELL TELEPHONE
COMPANY, Respondent.

No. 47662.

Supreme Court of Minnesota.

May 5, 1978.

Cragg & Bailly and Robert L. McCollum, Minneapolis, for appellant.

Faegre & Benson and Jerry W. Snider, Minneapolis, for respondent; Alan M. Schlesinger, N. W. Bell Tel. Co., Minneapolis, of counsel.

PETERSON, Justice.

Plaintiff brought suit against his employer, Northwestern Bell Telephone Company, alleging he was entitled to disability benefits for alcoholism under his employer's pension and disability benefit plan. After a bench trial, the district court entered judgment for defendant, from which this appeal is taken. We affirm.

The facts are undisputed. Plaintiff was employed by defendant from late 1945 until August 4, 1971, when he was dismissed from his position as an engineer because of alcoholism. Plaintiff was rehired by defendant on March 1, 1976. The events relevant to plaintiff's claim took place between June 1967 and March 1, 1976.

The first indication in defendant's records that plaintiff had an alcoholism problem was a report by defendant's chief engineer in June 1967 that plaintiff's incidental absence record "is poor and is worsening." Plaintiff consulted with defendant's medical director who concluded in a report in July 1967 that plaintiff presented "a rather typical profile of an alcoholic dependent." In August 1967, plaintiff's supervisor observed him drinking in his car during working hours. When confronted later, plaintiff said he would "quit drinking." Shortly thereafter, plaintiff was absent for 2 weeks for a complete physical examination necessitated by alcoholism. During the next 3 years, plaintiff was absent from work on 5 subsequent occasions for periods of 3 to 7 weeks for treatment of alcoholism. For each of these six absences for alcoholism treatment plaintiff received sickness disability benefits under defendant's Pension and Disability Plan (Plan).

Beginning in late December 1970, plaintiff again began to be absent periodically from work due to alcoholism. This continued through the early months of 1971. On August 4, 1971, plaintiff entered St. Mary's Hospital for treatment of alcoholism. On August 16, 1971, plaintiff was discharged from his employment (retroactive to August 4, 1971), though he was told later that if he could demonstrate sobriety for at least 1 year he would be considered for reemployment. For the next 2 years, plaintiff was almost continually institutionalized, first at St. Mary's Hospital and then at Anoka State Hospital, from which he was released on September 28, 1973. On March 1, 1976, plaintiff was reemployed by defendant. As a condition of reemployment, plaintiff furnished information that he had maintained sobriety for at least 1 year.

Defendant has for many years maintained for its employees various versions of the Plan. The Plan is not the subject of a collective-bargaining agreement and is funded solely by defendant. Employees receive a booklet which sets out the terms of the Plan and explains the benefits to employees which it provides. The Plan provides for disability, service, and deferred service pensions; accident disability benefits; sickness disability benefits; and death benefits. The Plan is administered by a five-person committee which is appointed by defendant and authorized by the Plan to "determine conclusively for all parties all questions arising in the administration of the Plan."

Following plaintiff's discharge, the committee certified that based on his 25 years of employment he was entitled to a deferred service pension of $312.61 per month beginning in 1984 when he would reach age 65. The committee denied him sickness disability benefits and a disability pension.

Plaintiff seeks sickness disability benefits under § 6 of the Plan for the 1-year period from August 4, 1971 (the date of his discharge and hospitalization), to August 4, 1972. For the period from August 4, 1972, to March 1, 1975 (1 year prior to the date he was reemployed by defendant), plaintiff seeks a disability pension under § 4(1)(d) of the Plan.

The trial court had before it the text of the Plan and the expert testimony of two physicians. The court found that plaintiff was not "totally disabled by sickness" within the meaning of the Plan and thus was not entitled to either sickness disability benefits or a disability pension. Plaintiff's appeal presents essentially two issues: (1) What was the proper scope of judicial review of the decision by defendant's committee to deny plaintiff benefits under the Plan; and (2) whether the district court erred as a matter of law in holding that under the Plan plaintiff was not entitled to sickness disability and disability pension benefits for alcoholism.

1. There are three Minnesota cases addressing the scope of judicial review of employer decisions to deny benefits claimed under a disability or pension plan to which the employee has not contributed. The first case, *Lano v. Rochester Germicide Co.*, 261 Minn. 556, 113 N.W.2d 460 (1962), establishes a very restricted scope of judicial review on the theory that these benefits are gratuities by the employer. The employee there was the manager of the employer's St. Paul office. The employer had unilaterally established a profit-sharing plan by means of a trust to provide employees with retirement benefits. The plaintiff-employee was discharged, and the committee administering the plan decided to pay his vested interest when he reached retirement age, rather than immediately. Plaintiff brought suit alleging that the committee's decision to defer payment was arbitrary and intended to deny him the capital he needed to begin a competing business. We held that—

> " * * * where a pension plan is not a part of the contract of employment, and the employee makes no contributions to it, the company may retain broad discretion in administering the fund since the benefits are in the nature of gratuities. The disposition of such funds is limited only by the terms of the trust instrument. Under these circumstances the courts have refused to interfere unless the aggrieved party has made a strong showing that the company acted arbitrarily, capriciously, fraudulently, or in bad faith." 261 Minn. 564, 113 N.W.2d 466.[1]

The second case is *Rakness v. Swift & Co.*, 275 Minn. 451, 147 N.W.2d 567 (1966) (reversal of summary judgment for employer), and 286 Minn. 74, 175 N.W.2d 429 (1970) (reversal of judgment n. o. v. for employer). In the first *Rakness* opinion, this court held that the district court should have submitted to the jury the underlying factual question of whether the plaintiff-employee had completed 20 years of "continuous service" so as to qualify for a pension under a noncontributory pension plan. In the second *Rakness* opinion, this court rejected the trial court's rationale that the trust agreement provided that benefits would be determined in the "sole discretion" of the company-appointed pension board. Thus, in the *Rakness* opinions this court implicitly treated the plan as a contract between the employer and employees which would be interpreted and enforced by the courts without any particular deference to the decisions of the administering committee. This view, referred to by commentators as the "contract theory," has been advanced in at least as many cases as the "gratuity theory" adopted in *Lano*. See, Annotations, 42 A.L.R.2d 467 and 81 A.L.R.2d 1070; and, e. g., *Craig v. Bemis Co. Inc.*, 517 F.2d 677, 680 (5 Cir. 1975).

---

1. This restricted scope of judicial review has been employed by other courts in similar cases, either explicitly or implicitly on the theory that the benefits are gratuities from the employer. *Powers v. Fisher Controls Co. Inc.*, 246 N.W.2d 279 (Iowa 1976). *Swift v. Shop Rite Food Stores, Inc.*, 83 N.M. 168, 489 P.2d 881 (1971). *Oiler v. Dayton Reliable Tool & Mfg. Co.*, 42 Ohio App.2d 26, 326 N.E.2d 691 (1974). For older cases using the gratuity theory, see, Annotations, 42 A.L.R.2d 464 and 81 A.L.R.2d 1075.

The third Minnesota case is *Foss v. Mahal,* 304 Minn. 350, 230 N.W.2d 604 (1975), on which the plaintiff in the present case chiefly relies. *Foss* recognized the inconsistency between *Lano* and *Rakness* and attempted to distinguish them on their facts. In *Foss,* a profit-sharing plan provided that any employee discharged due to insubordination or gross inefficiency forfeited the right to participate in the plan. The plaintiff, a long-time employee, gave notice that he intended to resign. His employer attempted to persuade him to remain and, when the attempt was unsuccessful, discharged him for supposed insubordination and gross inefficiency. The plaintiff brought suit and the jury returned a special verdict finding that the employee was not insubordinate or grossly inefficient and that he was entitled to 100 percent of the amount allocated to him under the plan. On appeal, this court affirmed. We recognized the significant difference between *Lano* and *Rakness* as to the scope of judicial review of employer decisions, but distinguished them on the ground that *Lano* involved a mere *delay* in the payment of benefits while *Rakness* involved a *complete denial* of benefits under a plan. Thus, *Foss* was held to fall under *Rakness* and "the jury must be allowed to consider not only the propriety, but also the evidentiary basis, of the board's [employer's] decision." *Foss v. Mahal,* 304 Minn. 350, 357, 230 N.W.2d 604, 608.

The present case confronts us with the weakness of this factual distinction. Here plaintiff did receive a deferred service pension but was completely denied the sickness disability benefits he claims. Thus, both parties have an argument as to the standard to be applied by the trial court. The distinction made in *Foss* between the mere delay in *Lano* and complete denial of benefits in *Rakness* also lacks any theoretical foundation. The theoretical basis for the deference accorded the employer's decision in *Lano* was that the benefits were a mere

gratuity. If this were a valid premise it would have also applied in *Rakness* and *Foss,* where it was implicitly rejected in favor of the contract theory.

We conclude that the reasoning of the *Lano* case has been so far eroded by the *Rakness* and *Foss* cases that *Lano* must be overruled in so far as it treats benefits under a noncontributory plan as gratuities rather than contractual obligations. Where an employer represents in a written document distributed to employees that an employee will receive benefit payments in certain specified circumstances as an incentive for continued service, those benefits are a part of the employee's compensation which the employer is contractually obligated to pay.[2] These benefits do not become gratuities simply because employees do not contribute to the funds from which they are paid. Since the benefits are contractual obligations, a trial court may properly address any underlying factual disputes between the parties in determining whether an employer decision to deny benefits is a breach of contract.

2. We turn then to the question of whether the trial court erred as a matter of law in holding that under defendant's Plan plaintiff was not entitled to sickness and disability benefits for alcoholism. In the present case, unlike the *Rakness* and *Foss* cases, there is no dispute as to the critical underlying facts. It is agreed that plaintiff was dismissed because of alcoholism and that alcoholism may be considered a sickness.

Under § 6 of the Plan, plaintiff must show "physical disability to work by reason of sickness" to receive sickness disability benefits. To receive a disability pension under § 4(1)(d) of the Plan, plaintiff must show he "has become totally disabled as a result of sickness or of injury." Thus, under both § 6 and § 4(1)(d) the basic requirements for benefits are (1) "sickness"; (2)

---

2. We recognize, of course, that it may be impractical or impossible to enumerate in the Plan all the detailed circumstances in which benefits would be paid or denied. Thus, the Plan, like other contracts, may vest limited discretion in a person or persons charged with administering the Plan.

"disability"; and (3) a causal relationship between the two. The Plan does not define the terms "sickness" or "disability." Section 8(12) of the Plan provides that "[d]isabled employees must take proper care of themselves and have proper treatment" or benefits will be discontinued.

We find little judicial authority to guide our application of these provisions in the present case. The parties cite, and we have found, only one case to consider whether alcoholism is a disabling disease which entitled an employee to benefits from his former employer under a private, noncontributory plan. In that case, *Wyper v. Providence Washington Ins. Co.*, 533 F.2d 57 (2 Cir. 1976), the Court of Appeals, in affirming a directed verdict for the defendant-employer, observed that alcoholism is not always disabling:

> "There seems to be substantial agreement that chronic alcoholism can become a disease with ultimate mental impairment. See *Driver v. Hinnant*, 356 F.2d 761, 763–64 (4 Cir. 1966); *Hays v. Finch*, *supra* [306 F.Supp. 115]. If the disease progresses to the point where there is recognizable mental or physical deterioration, moral values should not prevent a finding of permanent disability in a proper case despite the etiology of the mental disorder. On the other side of the coin, an addictive disease like alcoholism is in many cases curable, and its mere diagnosis is not synonymous with *permanent* disability or 'incapacitation.'" 533 F.2d 61.

We find these views persuasive. Classification of alcoholism as a sickness lifts some of the moral stigma associated with it, since most sicknesses are in large part involuntary, that is, not self-inflicted. But at the same time it must also be recognized that treatment of an addictive disease such as alcoholism is possible. With proper treatment, which includes voluntary effort by the alcoholic and medical assistance, the sickness may be controlled and disability avoided. Plaintiff himself has demonstrated this. Disability is not the inevitable result of alcoholism; and where disability

occurs its direct cause will often be the failure to obtain and persist in proper treatment.

In the present case, the evidence amply supports the trial court's determination that in the periods when plaintiff refrained from drinking he was not disabled and thus not entitled to benefits. During the periods when plaintiff was disabled, his disability was caused by his failure to avail himself of and persist in proper treatment of his sickness. Thus, plaintiff is not entitled to benefits under the Plan during either period.

This conclusion is not altered by the fact that defendant was tolerant of numerous absences by plaintiff and paid sickness disability benefits during six periods prior to plaintiff's dismissal when he was absent for alcoholism treatment. These payments were made during a time when it could be optimistically hoped that plaintiff would persist with treatment and permanently arrest his illness. Once it was obvious that plaintiff was not persisting in proper treatment, defendant's initial leniency did not obligate it to make further payments of sickness disability benefits which might only have funded plaintiff's drinking and further delayed his recognition of his problem.

Affirmed.

SHERAN, C. J., took no part in the consideration or decision of this case.