283 So.2d 783 (1973)
Robert H. DAVIS
v.
HUMBLE OIL & REFINING COMPANY et al.
No. 9305.
Court of Appeal of Louisiana, First Circuit.
May 29, 1973.
Dissenting Opinion June 4, 1973.
On Rehearing August 23, 1973.
*784 James A. George, Charles R. Moore, George & Moore, Harrison G. Bagwell, Baton Rouge, for appellant.
Calvin E. Hardin, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for appellees.
Before SARTAIN, BLANCHE and WATSON, JJ.
WATSON, Judge ad hoc.
This is an appeal from the granting of a summary judgment in favor of defendant against a former employee who seeks judicial review of his right to disability benefits. Plaintiff, Robert H. Davis, a resident of Baton Rouge, was employed by defendant, Humble Oil and Refining Company, for some twenty-odd years at its Baton Rouge refinery and prior to that for a short time on a tanker. On August 16, 1963 he was working at the plant in Baton Rouge when he suffered what he alleges to be a serious industrial accident in the nature of monel poisoning.
We will not detail the alleged particulars of the accident, the subsequent medical treatment, the physicians' reports or the counter-allegations made by defendant because these matters are not germane to a decision of the appeal.
In any event, under disputed circumstances, the plaintiff ceased performing any duties for Humble in December, 1964. His employments status was terminated by defendant, effective April 13, 1965.
It is alleged in plaintiff's amending and supplemental petition at paragraph 14 that plaintiff made regular monthly payments to the "Humble Benefit Plan" during his 25 year term of employment and that, as a consequence, he is entitled to receive disability benefits of $307 per month under the Humble Benefit Plan. It should be noted that the record as considered on motion for summary judgment does not establish conclusively whether Davis was participating in a contributory or a non-contributory pension plan. Counsel for defendant represents in a supplemental brief that as to the annuity or pension feature of the plan, it is voluntary and contributory, but as to the disability annuity feature of the plan there is required no contribution by the employee. We appreciate the courtesy of counsel in supplying this information. We would find it helpful, but not essential, to have the record itself clarify this point.
Following his discharge, plaintiff filed through counsel a detailed petition claiming disability benefits with the benefit plan committee of Humble Oil and Refining Company, but the committee rejected plaintiff's application.
After the committee denied plaintiff's right to disability benefits, suit was filed in the Nineteenth Judicial District Court, East Baton Rouge Parish, along with extensive requests for admission of facts, a request to admit authenticity of documents, and a request for the production of a copy of the Humble Benefit Plan.
The defendant, in response to plaintiff's request for production, filed a true copy of *785 the Humble Benefit Plan in the record.[1] Defendant objected to the request by plaintiff for admissions of fact contending the request is irrelevant since the claims of plaintiff had already been considered by the Humble Benefit Plan committee and rejected.
In response to plaintiff's request to admit authenticity of documents, defendant filed a lengthy response admitting and stipulating that the documents are authentic but representing that the documents were submitted to and considered by the committee with the possible exception of two of the 26 documents and a third document which constitutes the findings, conclusions and decisions of the committee. The only point disputed was that certain underlining, brackets or other handwritten notations were not on the original documents.
In effect, the defendant admitted the authenticity of all of the various documents attached by plaintiff to his petition, consisting mostly of medical reports and statements concerning various medical procedures relating to plaintiff's alleged disability. However, defendant contended that all of these had been submitted to the committee which was charged with the administration of the benefit plan and that plaintiff's claim had been rejected.
Defendant filed an exception of no cause of action and/or no right of action based on the contention that the entire matter had been submitted to the committee and that the finding of the committee was conclusive.
The defendant also filed a motion for summary judgment asserting that on the basis of the record there was no genuine issue of fact and that Humble was entitled to a judgment in its favor as a matter of law. The exception of no cause and/or no right of action was overruled, but the trial court granted the motion for summary *786 judgment and dismissed the suit of plaintiff.
In ruling on a motion for summary judgment, the trial court is governed by the provisions of LSA-C.C.P. art. 966 which reads as follows:
The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
We are not favored by written reasons for judgment by the trial court, but, of necessity, the trial court found that there was no genuine issue as to material fact and that defendant was entitled to a judgment as a matter of law.
Appellant complains on appeal that (1) there are numerous issues of material fact which are not resolved and (2) that defendant was not entitled to a judgment as a matter of law.
Issues of Fact
In his brief, counsel for plaintiff-appellant points out six disputed issues of fact and these are stated as follows:
(a) The extent of the disability of plaintiff.
(b) Whether the plaintiff arbitrarily refused to continue employment with defendant.
(c) Whether the committee was fairly constituted.
(d) The weight to be given to the medical reports before the committee.
(e) Whether the committee was arbitrary, unreasonable, capricious and without just cause in refusing to award those benefits which he was entitled to by law.
(f) The nature of plaintiff's work at Humble and all factors and circumstances surrounding his employment.
We do not agree with the contention of plaintiff that it was necessary for the trial court to resolve all of the factual issues listed by plaintiff to decide the motion for summary judgment. We take the view that on motion for summary judgment the trial court was presented with only two genuine issues of material fact which are similar to (d) and (e) above, to-wit: (1) whether the evidence before the committee was sufficient to decide the claim and (2) whether the decision of the committee was arbitrary or capricious.
The Applicable LawNew York or Louisiana.
To resolve the question of whether the motion for summary judgment was properly granted, we come initially to the question of which state's law governs plaintiff's rights under the pension plan. It will be recalled that the printed pension plan provides that it shall be governed by the law of the State of New York. Counsel for plaintiff contends, on the other hand, that his client's rights are to be decided under the law of Louisiana, which argument is strenuously opposed by the counsel for defendant.
We have concluded, for the reasons given at some length below, that the case should be decided under Louisiana law, but that the result is the same or similar to that which would be reached in New York.
At the outset, we must determine whether the provision of the pension plan adopting *787 the law of the State of New York is controlling. Superficially, it may appear that there is no reason why such a provision in an employer's pension plan does not represent the contract between the parties to which they are bound. However, closer analysis reveals that there are two reasons for a Louisiana court to refuse to recognize this provision. These are: (1) that the provision is in reality part of an adhesion contract and, (2) that there is a complete absence of any significant relationship between the State of New York and this litigation.
As to the adhesionary nature of the provision, while it is true that parties may choose the law to govern their agreements under some circumstances (See Restatement Second, Conflict of Laws § 187), we see no indication in the facts of the present case of a free choice of law on the part of the plaintiff, Davis. There is no evidence of him or any party representing him having any part in the confection of the printed instrument. The New York law clause is not something about which he bargained or which he was free to accept or refuse.
Therefore, we are of the opinion that the printed provision in the plan is not something about which the parties bargained but is in reality a portion of an adhesion contract. Professor Albert A. Ehrenzweig of the University of California in his Treatise on the Conflict of Laws (West Publishing Company, 1962) observes that:
"Slowly and against much resistance courts and writers are beginning to recognize and to admit that the law of contracts has ceased to be a unitary set of rules relating to a `bargain' and a `meeting of the minds'." Id., page 454.
He distinguishes a stipulated choice of law such as that in the Humble Benefit Plan by the term "adhesion contract", which is usually a clause in a standard instrument presented by the entrepreneur about which the other party has nothing to say; the other party either adheres to the terms or takes it not at all.[2] Regarding the stipulation of applicable law in an instrument, called professio juris, he adds:
"Such stipulations have been most frequently exacted in printed forms drafted by insurers, employers and money lenders." Id., page 455.
An examination of the relevant provisions of Louisiana law reflects that an adhesion contract would not be binding under the fundamental principles of our codal law. Referring to contracts, Louisiana Civil Code Article 1798 says, in pertinent part, that "... the will of both parties must unite on the same point." And describing consent, Civil Code Article 1819 provides it is the "... concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will ..."
There is no evidence that plaintiff ever consented or agreed that his rights to a disability pension would be governed by New York law. After examining the Humble Benefit Plan and its provision concerning the law to be applied we believe that it is an adhesion contract and that the adherent, plaintiff here, had no real choice *788 and struck no bargain which might be described as him joining in a choice of law to govern the contract. We approve, therefore, the rule suggested by Professor Ehrenzweig that "... a stipulation of applicable law in an adhesion contract is invalid as lacking freedom of choice." 53 Columbia L.Rev. 1072 at 1084. We decline to recognize a provision of an adhesion contract which would have as its effect the substitution of the law of another jurisdiction for the law of Louisiana.
The second reason for declining to honor the New York law provision is that we are of the opinion that while parties are free to bargain about and choose the law to govern their agreements, the law chosen must have a significant relationship to the contract. Owens v. Hagenbeck-Wallace Shows Company, (1937), 58 R.I. 162, 192 A. 158, Rehearing Denied 58 R.I. 268, 192 A. 464.
In Owens, the court said:
"We are of the opinion, therefore, that the right of parties to a contract to have their reciprocal duties and obligations under that contract governed by the law of some particular jurisdiction is limited to the selection or stipulation by them of the law of a jurisdiction which has a real relation to the contract." 192 A. 158 at 164.
This rule is recognized in Restatement Second, Conflict of Laws § 187 which says in part that the law of the chosen state will not be applied if
"(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice ..."
Professor Goodrich makes a very similar analysis:
"There is often stated a requirement that the state whose law is chosen must have some substantial relationship to the transaction or that there be some other reasonable basis for the reference." Goodrich & Scoles, Conflict of Laws, West, 1964, page 203.
Apart from the negative considerations against honoring the pension plan provision adopting the New York law, there are strong affirmative reasons for applying Louisiana law to the present litigation.
There is, of course, much division among legal scholars as to how to treat questions concerning conflict of laws. But under almost any conflicts approach to the present litigation, Louisiana law would be the law of the case, absent an effective choice by the parties to the contrary. Our findings that the stipulated choice of New York law is in the nature of an adhesion contract and that New York has no substantial relationship to the contract render ineffective the purported choice of law provision.
The basic or traditional Louisiana approach to conflict of laws is found in Louisiana Civil Code article 10, which reads as follows:
Art. 10. The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.
But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect.
The exception made in the second paragraph of this article does not hold, when a citizen of another State of the Union, or a citizen or subject of a foreign State or country, disposes by will or testament, or by any other act causa mortis made out of this State, of his movable property situated in this State, if at the time of making said will or testament, or any other act causa mortis, and at the time of his death, he resides and is domiciliated out of this State.
The most significant portion of this article relative to the issue under consideration is paragraph two because it appears that as *789 concerns plaintiff's rights under the Humble Benefit Plan, the plan was intended to have effect in the State of Louisiana, and under the second paragraph of the article, Louisiana law would govern.
The Louisiana Supreme Court has held that a contract which is to have effect in Louisiana must be construed and governed by the laws of Louisiana. General Talking Pictures Corporation v. Pine Tree Amusement Co., 180 La. 529, 156 So. 812 (1934). Thus, the jurisprudence as well as the codal law suggest that Louisiana law is to be applied.
This conclusion would harmonize with the traditional approach to the conflict of laws question as found in Bologna Brothers v. Morrissey, 154 So.2d 455 (La.App. 2 Cir. 1963) where the court follows the rule that "... the law of the place where a contract is sought to be enforced will govern as to remedy." 154 So.2d 455 at 460. This is referred to as lex fori (the law of the forum controls procedural rights of the parties) as distinguished from lex loci (the doctrine that the law of the place where the contract was entered governs the substantive rights of the parties). The matter of availability of the judicial system to enforce a disability or pension benefit certainly has strong procedural aspects.
While Article 10 and the lex fori doctrine are persuasive authorities for finding that Louisiana law governs, we find additional, and perhaps even more persuasive, authority in the "significant contracts" approach (also sometimes referred to as the "center of gravity" or "grouping of contracts" theories) to the resolution of conflict of laws problems.
Just recently the Louisiana Supreme Court has emphasized the significant contacts approach when in Jagers v. Royal Indemnity Co., La., 276 So.2d 309 (1973) the case of Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970), was overruled by name. Johnson had rejected in tort actions the significant contacts theory. The Jagers holding, followed even more recently in Sullivan v. Hardware Mutual Casualty Co., La., 278 So.2d 30 (1973), was described in Sullivan as follows:
"In Jagers we abandoned the rigid rule of lex loci delicti holding that the facts there presented a false conflict of laws question, that only the State of Louisiana had an interest in the application of its law, and that the State of Mississippi had no such interest."
While the present litigation sounds in contract (or "obligations" to use the Civil Law term) rather than in tort as did Jagers and Sullivan, we find significant that New York has no interest in the application of its law and that only Louisiana has such an interest.
In view of the overruling of Johnson, we deem appropriate a brief discussion of the earlier Louisiana jurisprudence on the significant contacts theory.
The problems raised in conflict of laws have been recognized by now Justice (then Judge) Tate in the case of Universal C. I. T. Credit Corporation v. Hulett, 151 So.2d 705 (La.App. 3 Cir. 1963) and several of his observations are pertinent here. He notes the jurisprudential recognition of Article 10, and that the rule has been that the law of the place where the contract is to have effect determines the rights and obligations of the parties. 151 So.2d 705 at 707.
Justice Tate describes the methodology of applying the conflict of laws rules, as follows:
"To decide a case by the application of formal conflict-of-law principles is often not so much a matter of logic and the determination of the single correct answer by the logic-dictated application of such principles, as it is the selection by the court of the forum from among the competing intra-state and extra-state factors those which that court regards to be significant and which justify application *790 of the particular conflict-of-law principle or principles which afford weight to the intra- (or extra-) state factors found to be significant by the court of the forum." 151 So.2d 705 at 710.
Finally, he suggests an approach which has much to commend it as a modern solution to this type of problem:
"... in many instances the courts actually choose those formal conflict-of-law principles which justify the application of the law of the forum whenever there are sufficient factual contracts with the forum as to justify the application of its own law." 151 So.2d 705 at 711.
In the case before us, we have a citizen of Louisiana, who was employed for many years in Louisiana, who still resides in Louisiana, with one of the employer's substantial places of business in Louisiana, with many if not all of the witnesses located in Louisiana, and with the State of Louisiana facing the prospect of taking care of plaintiff should he be so unfortunate as to fall on welfare rolls. On the basis of these contacts with the State of Louisiana, it appears to us appropriate to conclude, as did the court in Universal C. I. T. Credit Corporation v. Hulett, supra, that:
"... a combination of all these factors indicates that it is more appropriate for the Louisiana law to be applied by a Louisiana court in deciding this matter, than that of another forum which has less significant factual connections with the matter in litigation." 151 So.2d 705 at 711.
See also Blanchard v. Blanchard, 180 So.2d 564 (La.App. 3 Cir. 1965); Doty v. Central Mutual Insurance Co., 186 So.2d 328 (La.App. 3 Cir. 1966), writ refused, 249 La. 486, 187 So.2d 451.
Thus, we conclude that under any of the various approaches to the conflict of laws issue, the law of Louisiana is the law to be applied to the case now before us.
The Law of other Jurisdictions
The precise questions presented have never been considered by the Louisiana courts. Similar questions relating to pension plans have given considerable difficulty to the courts of other jurisdictions. See "Legal Problems of Private Pension Plans", 70 Harvard Law Review 490. We have found helpful a study of the treatment of pension plan cases, where a board or committee was given exclusive authority, in other states. There are many types of plans and there have been many different judicial interpretations.
Many jurisdictions have followed the rule of Menke v. Thompson, 140 F.2d 786 (8th Cir. 1944), which is urged here by the defendant, where the court characterized the pension as a gratuity or bounty which the employer could condition as desired, which included placing exclusive power in a company board for administration. This approach has been emphasized where the court is considering non-contributory pension and profit sharing plans. Going v. Southern Mill Employees' Trust (Okl.) 281 P.2d 762. Other jurisdictions voice the rule that courts will not interfere unless there is a showing that the company board acted arbitrarily, capriciously, fraudulently or in bad faith. Norman v. Southern Bell Tel. and Tel. Co. (Ky.) 322 S.W.2d 95; Lano v. Rochester Germicide Co., 261 Minn. 556, 113 N.W.2d 460; Smith v. New England Tel. and Tel. Co., 109 N.H. 172, 246 A.2d 697; Teren v. First National Bank, 243 Or. 251, 412 P.2d 794. Texas has taken a strong position upholding the action of the pension committees in cases of non-contributory plans. See Aston v. Magnolia Petroleum Co., (Tex.Civ.App.) 241 S.W.2d 306 and the cases cited therein.
However, a view has developed in some jurisdictions even with non-contributory plans challenging the notion that the benefits are bounties or gratuities, as a Delaware court observed in the case of Delaware Trust Company v. Delaware Trust *791 Company, 222 A.2d 320 (Del.Ch.1966), at 325:
"While voluntary pension plans were until relatively recently considered to be of a gratuitous nature, the modern trend is to view them as constituting offers of additional compensation and as incentives to continuing and more dedicated service."
Illustrative of the developing view of the employer's motivation in establishing a benefit plan (and the rights acquired by an employee) is Russell v. Princeton Laboratories, Inc., 50 N.J. 30, 231 A.2d 800 (1967), where the employer was funding a profit-sharing trust, with no contribution by the employee. The court said:
"It must be remembered that we are not dealing with a mere gratuity, to be bestowed upon such objects of the donor's bounty as the donor or his trustee may select. On the contrary, the trust indenture represents a hard-headed business device to attract and to hold employees." 231 A.2d 800 at 803.
Plaintiff Russell was allowed to recover, although the trust indenture described the decision of its "Advisory Committee" (here two of the three members being the corporation president and his wife) as "final." The Advisory Committee was held to be required to stay "within the bounds of a reasonable judgment." 231 A.2d 800 at 805.
Another case limiting the power of a company board is Ellis v. Emhart Manufacturing Company, 150 Conn. 501, 191 A. 2d 546, where the court considered a noncontributory benefit plan which provided, instead of pension benefits, a stock option system. The plaintiff was the executor for one Adam who held, prior to his death, certain stock options under a plan which provided that the board of directors' interpretation of the plan would be final and conclusive. The board of directors declined to issue the full number of shares to which the executor thought his decedent had been entitled and the executor filed suit. In deciding the case against the employer, the Supreme Court of Errors of Connecticut noted that the issuance of the option to Adam was for a valid consideration, i. e., Adam's continued employment with the company, and, therefore, constituted a contract between him and the defendant. The Connecticut court gave a full review to the plaintiff and held that where an employer declares a plan to be within the absolute discretion of the directors, the court will interpret the plan to prevent the defeat of the employee's rights.
Much argument has centered on the law of New York. Our reading of the leading case cited by defense counsel, Gitelson v. DuPont, 17 N.Y.2d 46, 268 N.Y.S.2d 11, 215 N.E.2d 336 (1966), leads us to believe that if the judicial technique used there represents New York law, then it closely equates with Louisiana law or what Louisiana law should be. In Gitelson v. DuPont, it is true that the New York court noted that the retirement fund was administered by a board and that under the terms of the plan, the board was vested with the sole authority to determine rights to retirement benefits; but it is significant that the New York court stated that the "... interpretation and construction of such documents as contracts and trust instruments are matters properly treated as questions of law and are reviewable by this court". 17 N.Y.2d 48, 268 N.Y.S.2d 12, 215 N.E.2d 337. The court said further that:
"In this respect the courts below have failed to justify their reversal of the Board's decision by demonstrating that it was arbitrary or capricious, that it was a product of bad faith, or even that there was insufficient evidence before the members of the Board at the time that they made their decision. On the contrary, the facts in the record support the Board's action." 17 N.Y.2d 49, 268 N. Y.S.2d 13, 215 N.E.2d 338.
Then, after noting the finality of the decision of the board, the New York court proceeded to review carefully the facts *792 which had been presented in the record and concluded that the board was correct in its decisionnot arbitrary or capricious.
We cannot agree with the characterization of the committee's decision as final, believing that the right of judicial review cannot be denied, but we would limit the inquiry to the points implied as controlling by the New York court, that the committee's action must be based on sufficient evidence and must not be arbitrary or capricious.
Louisiana Law
Our analysis of the jurisprudence of other jurisdictions in light of the relevant principles of Louisiana law leads us to conclude that there may be little or no difference between the Louisiana law and that of New York, at least, insofar as the actual result reached in Gitelson v. DuPont, supra.
We have no hesitation in concluding that Davis has an enforceable right under the Humble Benefit Plan for as provided by LSA-C.C. art. 1894: "An agreement is not the less valid, though the cause be not expressed." And as further provided by LSA-C.C. art. 1901:
"Agreements legally entered into have the effect of laws on those who have formed them.
"They cannot be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
"They must be performed with good faith."
We find that Humble, the employer, certainly had cause as contemplated by the Civil Law for incurring the obligations to plaintiff resulting from the establishment of the Humble Benefit Plan. It seems obvious that by providing disability and retirement benefits, Humble could expect to attract better employees, to have happier employees, to encourage skilled employees to remain in the service of Humble, to promote better labor relations, to promote company morale, and to enjoy the reputation of a good employer.
Even more nebulous advantages have long been recognized in Louisiana as lawful cause for the incurring of an obligation. In the 1836 case of Louisiana College v. Keller, 10 La. 164 (1836), the Louisiana Supreme Court held as follows:
"We are not informed as to the consideration of this promise, by anything on the face of the papers. It may have been the advantage the defendant expected to derive from the establishment of a college at his own door, by which he would save great expense in the education of his children, or it may have been a spirit of liberality and a desire to be distinguished as a patron of letters. Whatever it may have been, we see nothing illicit in it; nothing forbidden by law, and the promise binds him, if he consented freely and the contract had a lawful object. In contracts of beneficence, the intention to confer a benefit is a sufficient consideration." 10 La. 164 at 167.
Therefore, whether Davis contributed to the benefit plan or not, we conclude that he had a substantial, vested and enforceable right under the Humble Benefit Plan.
However, we find no objection in Louisiana law to a committee review of pension plan disputes. Undoubtedly, the use of a committee to decide many matters which arise in the administration of a pension plan by a large corporation such as Humble has many advantages, promoting among other things a uniformity of administration which inures to the advantage of both employer and employees. In fact, it probably makes possible better pensions for the employees. Nevertheless, we do not believe that interpretation and decision of pension plan disputes by a committee would license arbitrary or capricious action under Louisiana law any more than under New York law.
*793 As to the actions of public boards or bodies the Louisiana law is described in Stevens Concrete Pipe & Products, Inc. v. Burgess, 252 La. 136, 209 So.2d 733 (1968), as follows:
"... the time-honored rule that it is not the province of the judiciary to substitute its judgment for that of a legislative or administrative body unless the action of such body is unsupported by evidence and hence is to be deemed unreasonable, arbitrary or capricious." 209 So.2d 733 at 739.
This rule, we believe, can be applied by analogy to a private committee charged with administration of a pension plan. Therefore, stated affirmatively, we believe that it is the prerogative and duty of the courts to hear and determine actions where there is a charge that there has been an arbitrary and capricious denial of a substantial right, such as a disability pension, and to grant the relief, if any, to which the parties are entitled.
On the basis of these considerations we have concluded that the trial court erred in granting Humble's motion for summary judgment. LSA-C.C.P. art. 966; Odom v. Hooper, La., 273 So.2d 510 (1973). In our opinion, Davis has the right to have a judicial review in the courts of Louisiana[3] of his charge of arbitrary, capricious and bad faith treatment by the committee charged with interpretation of the pension plan.
Plaintiff does not urge that he is entitled to a complete trial nor do we believe that the trial court should go outside the present record to go into the proceedings by the pension plan committed. However, we believe the trial court should decide two questions of fact: (1) was the evidence before the committee sufficient to make a determination of plaintiff's claim and (2) was the committee's decision arbitrary or capricious.
For the reasons assigned the judgment of the lower court is reversed and the case is remanded for further proceedings in accordance with the views expressed in this opinion.
Costs of the appeal are taxed against appellee.
Reversed and remanded.
BLANCHE, Judge (dissenting).
I agree with the majority opinion insofar as it recognizes the New York rule set forth in Gitelson v. DuPont, 17 N.Y.2d 46, 268 N.Y.S.2d 11, 215 N.E.2d 336 (1966), limiting the scope of judicial review of the committee action. However, I do not agree with the opinion in at least two respects.
First, I believe that New York law should apply rather than Louisiana law because of the specific provision in the Humble Benefit Plan specifying that New York law shall govern. The majority recognizes that appellant Davis has an enforceable right under the Benefit Plan and that the committee review of a pension plan is not contrary to the law or public policy of the State of Louisiana. With the establishment of those premises, it is difficult to understand why that provision of the plan stating that New York law is to apply should not be honored. The obvious reason *794 the parties have specified that the laws of a certain state shall apply is to insure uniformity in the application of the law to controversy arising out of the plan. It is a well known fact that Humble has employees in practically every state in the union. In my opinion, if each state applies its own law in adjudicating the rights of the parties under the plan, it would create uncertainty and a lack of uniformity in administering the plan. The employer and employee alike have an interest in the orderly administration of the pension Benefit Plan, which interest, in my opinion, is reason enough to stipulate that the law of a particular state shall govern.
Finally, I submit that when all of the pleadings and documents filed by both the mover and appellant are considered, there is no genuine issue as to the material fact of whether the committee acted arbitrarily, capriciously and without just cause.
Therefore, the trial court acted properly in dismissing plaintiff's suit on the motion for summary judgment.

ON REHEARING
SARTAIN, Judge.
We granted a rehearing in this cause for the primary purpose of reconsidering three aspects of our original opinion, namely:
(1) The apparent reliance upon the "adhesionary" character we attributed to the "Humble Benefit Plan" as justifying plaintiff's right to bring this action in a court of this state;
(2) Whether there are sufficient legal grounds for us to avoid applying New York law as provided for in the contract in determining the relative rights of the plaintiff and Humble Oil & Refining Company; and
(3) The propriety of the granting of a motion for summary judgment.
On reconsideration we do not consider that it is necessary to label the Humble Benefit Plan as an adhesionary contract in order to find justification for permitting plaintiff to maintain his action in this state. It seems inconsistent to us to say that plaintiff can seek recovery under a contract and then not be required to adhere to all of the provisions of that contract. As stated in the original opinion, there is justification for permitting plaintiff to bring this action in Louisiana based upon the various approaches to the conflict of laws issue.
However, we believe we skirted the issue of whether to apply New York law by simply saying the law of Louisiana should be the same as New York. Ordinarily, where a contract is entered into and one of the parties thereto endeavors to enforce a right claimed to have arisen under the contract, the party is bound by each provision of the contract unless there is jurisprudential or statutory law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written.
None has been cited nor do we know of any compelling reason why New York law should not apply in this case. To the contrary, the plan here in question involves not only employees of Humble Oil & Refining Company, but also Humble Pipeline Company, Humble Gas Transmission Company and McKamie Gas Cleaning Company. These corporations, and particularly the defendant (now known as Exxon), employ many thousands of people in numerous states. As stated in the dissenting opinion we believe that it is to the benefit of all employees of these companies that the "Benefit Plan" be administered to all persons alike and not be riddled with various interpretations as may be applied to it by the courts of other states in which the employer may have employees. We concur in the view expressed in the original dissent that to hold otherwise "would create uncertainty and a lack of uniformity in administering the plan".
There is no dispute but that Gitelson v. Dupont, 17 N.Y.2d 46, 268 N.Y.S.2d 11, 215 *795 N.E.2d 336 (1966) states in detail the New-York law on the subject. In Gitelson, the court decided that the decision of the Benefit Plan Committee is final as long as the committee did not act in an arbitrary or capricious manner. Judicial review of the actions of the committee is restricted to this determination.
For convenience we quote from our original opinion as follows:
"Plaintiff does not urge that he is entitled to a complete trial nor do we believe that the trial court should go outside the present record to go into the proceedings by the pension plan committee. However, we believe the trial court should decide two questions of fact: (1) was the evidence before the committee sufficient to make a determination of plaintiff's claim and (2) was the committee's decision arbitrary or capricious."
This record contains all of the information that was furnished to the committee and therefore the first question of fact cited above is not necessary and we specifically retract the same. Thus, the sole issue to be determined on remand is "(2) was the committee's decision arbitrary or capricious."
We again reiterate that plaintiff is not entitled to go outside the present record. In his original brief we were lead to believe that plaintiff did not expect a complete trial but in this belief we were undoubtedly mistaken because in his brief on the rehearing plaintiff re-urges all of the grounds set forth in his original petition which of necessity would require a trial de novo irrespective of the committee's decision. If on the trial on the merits the trial judge and/or jury should determine that the action of the committee was arbitrary and capricious, then the court may enter judgment in favor of the plaintiff and against the defendant in accordance with the terms of the Benefit Plan.
The remaining issue for resolution deals with defendant's motion for summary judgment. It suffices here to say that there are affidavits, counter-affidavits, responses to interrogatories, requests for admission of fact, conflicting medical reports, and other matters which by their very nature raise a dispute of fact. To render a motion for summary judgment at the trial or appellate level without first having a trial on the merits is tantamount to substituting a motion for summary judgment for a trial on the merits which is contrary to the intent of C.C.P. Art. 966 et seq. Domingue v. Independent, Inc., 248 So.2d 608 (3rd La. App. 1971).
Accordingly, for the above reasons, our original opinion is reinstated but for the reasons more fully expressed in this opinion on rehearing.
Reversed and remanded.
NOTES
[1] For convenient reference we reproduce the pertinent paragraphs of the Humble Benefit Plan (1963) as found at TR. 116.

2.5 Governing Law
This Benefit Plan and all action taken under it shall be governed, as to validity, construction, interpretation and administration, by the law of the State of New York.
3.1 Committee Defined
"Committee" means the Benefit Plan Committee established by Humble.
3.2 May Interpret and Apply
The Committee is empowered to interpret this Benefit Plan and to determine all issues of fact arising in the application of this Benefit Plan, however important the subject may be, except as this Benefit Plan says otherwise, and such action shall be conclusive for all persons relying on this Benefit Plan.
3.3 May Adopt Regulations
The Committee may exercise its power by adopting regulations or by making individual determinations, or both.
When this Benefit Plan refers to an employee taking action of any kind under this Benefit Plan, it means doing so at the time and in the way that the Committee prescribes by regulation.
4.1 Conditions for Retirement
When a covered employee terminates without transferring, or is so terminated, he meets the conditions for retirement if at that time
 His normal retirement time has arrived,
 His termination is for permanent disability, and permanent benefits are not denied under the Disability Plan,
 His voluntary retirement time has arrived, or
 He otherwise qualifies under the employer's retirement policy.
6.5 Assuring Compliance
If a person claims that the employer is not complying with an obligation that it owes to the person under this Benefit Plan, the person as his exclusive remedy shall present his claim to the Committee. Upon receiving such a claim the Committee shall decide whether it is true or not, and its decision shall be conclusive for all persons relying on this Benefit Plan.
8.1 Acquiring a Matured Right
When a covered employee acquires annuitant status he at the same time acquires a matured right to his Disability Annuity, if any, provided he was terminated for permanent disability, and permanent benefits are not denied under the Disability Plan.
[2] See Oceanic Steam Nav. Co. v. Corcoran, 9 F.2d 724 (2 Cir. 1925), which held void a provision of a steamship ticket providing that all questions concerning the carrier's liability were to be decided under English law. In Oceanic the stated rationale was that honoring the English law stipulation would have the effect of enforcing a principle of law contrary to public policy of the United States; the ticket was treated by the court as an adhesion contract not binding on the adherent-passenger.

Also see Marine Ins. Co., Ltd. of London, England v. Rehm, 177 So. 79 (La. App.Orl.Cir.1937) where an inscription on a parking lot ticket limiting the liability of a compensated depositary was held to not constitute a contract between the parties.
[3] The courts have not been unwilling to decide pension plan questions. Disability claims under non-contributory pension or benefit plans which do not contain a provision for final or conclusive determination by a board or a committee have been held to present questions of fact. Bradley v. Pritchard, 254 N.C. 175, 118 S.E.2d 422. Also, summary judgment has been held improper where there is a dispute as to "continuous service". Rakness v. Swift and Company, 275 Minn. 451, 147 N.W.2d 567. A plan giving the employer the right to terminate it at any time cannot be discontinued in such a manner as to deprive an employee of a vested right to a pension. Stopford v. Boonton Molding Company, 56 N.J. 169, 265 A.2d 657 (1970).