374 So.2d 699 (1979)
ADR (a Division of National Life of Florida Corporation)
v.
Bartlett E. GRAVES.
No. 12712.
Court of Appeal of Louisiana, First Circuit.
July 16, 1979.
Rehearing Denied September 27, 1979.
*700 Charest Thibaut and John S. Thibaut, Jr., Baton Rouge, for plaintiff-appellant ADR (A Division of National Life of Florida Corp).
Robert E. Harroun, III, Baton Rouge, for defendant-appellee Bartlett E. Graves.
Before ELLIS, LOTTINGER and LEAR, JJ.
ELLIS, Judge:
This is a suit to enforce a non-competition agreement contained in an employment contract between plaintiff, ADR, a division of National Life of Florida Corporation, and defendant, Bartlett E. Graves. Specifically, plaintiff seeks to enjoin defendant from engaging in business in competition with it for a period of 12 months after September 5, 1978. From a judgment dismissing its suit, plaintiff has appealed.
ADR is engaged in the business of serving as a management-consultant to automobile dealerships in the fields of automobile finance and credit life insurance. Its services are designed to assist the dealer in financing more sales through the dealership, as opposed to outside sources of financing; in writing more credit life insurance and health and accident insurance covering the purchases of the automobiles; and in processing insurance claims.
In September, 1973, ADR employed Mr. Graves, and gave him training in its business. In May, 1974, he was made District Manager for the southern half of Louisiana, the Parish of Orleans excepted. Mr. Graves remained employed in that capacity but with changing territories, until August 28, 1978, when he sent a letter of resignation to plaintiff. The letter was received by ADR on September 5, 1978.
At some time in 1978, Mr. Graves decided to leave ADR and go into business for himself. In July, 1978, he began looking for an insurance company with which he could place the business which he generated. During the month of August, while still in the employ of plaintiff, he told his various clients that he was leaving ADR to set up his own firm, and solicited their business. Of the 38 accounts he was handling, 37 transferred their business to defendant after he resigned.
In seeking its relief, ADR relies on a contract of employment entered into on October 27, 1976, which contains the following relevant provisions:
"RESTRICTIVE COVENANTS. Upon the termination of his employment, whether by termination of this agreement, by wrongful discharge, or otherwise, the Employee shall not for a period of 12 months after the termination of this agreement, directly or indirectly, within any of the restricted territories specified in the schedule attached hereto, enter into or engage in the sale or solicitation of credit life and accident and health insurance business generated from automobile dealerships or agencies or otherwise engage in the automobile credit life and accident and health or as a partner or joint venturer, or as an Employee, agent or salesman for any person, or as an officer, director or shareholder of a corporation, or otherwise. This covenant on the part of the Employee shall be construed as an agreement independent of any other provision in this agreement; and the existence of any claim or cause of action of the Employee against the Company, whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by the Company of this covenant."
The contract also provides that it shall be construed under the laws of North Carolina. In rendering his decision the trial judge applied the law of Louisiana, and plaintiff now complains that the case should have been decided under North Carolina law.
Parties are free to contract as to the law applicable to their agreements, and such stipulations will be given effect in the courts of another state unless there are *701 legal or "strong public policy considerations justifying the refusal to honor the contract as written." Davis v. Humble Oil & Refining Company, 283 So.2d 783, 794 (La.App. 1st Cir. 1973).
In this case, such a strong public policy exists, as expressed in the provisions of R.S. 23:921. Since the defendant is a Louisiana resident, and the contract was intended to be executed in this state, we find that Louisiana law should be applied.
R.S. 23:921 provides:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years."
Plaintiff recognizes the above statute, but claims that it has incurred expenses in training the defendant and in advertising the business which would permit a non-competition agreement, under the above language. In Orkin Exterminating Company v. Foti, 302 So.2d 593 (La.1974), the Supreme Court, interpreting the above statute, said:
"In view of the fundamental policy of the basic statute, the apparent purpose of the 1962 amendment, as stated in Conque [National Motor Club of La., Inc. v. Conque, 173 So.2d 238 (La.App.)], `is to protect an employer only where he has invested substantial sums in special training of the employee or in advertising the employee's connection with his business.' 173 So.2d 241.
"If an employer extensively advertises a particular employee as the man to go to for the employer's type of services, it is not unfair to protect the employer's investment in this particularized asset by authorizing a limited non-competition agreement to prevent the advertised employee from misusing it. If an employer spends a substantial sum affording special training to an employee, it may not be unfair to protect the employer by authorizing a limited non-competition agreement to prevent the employee from using this specialized training for the benefit of another in competition with his former employer.
"However, as the Conque line of cases holds, normal expenses of administration and supervisionsuch as employee sales and training meetings, the time spent breaking in a new employee, training courses in the administrative needs of the employer itselfcannot be considered the sort of `training' expense intended to justify the heavily disfavored non-competition agreement. Almost any employer could so tie his employees to their present employment by exacting a non-competition agreement. As Conque notes, 173 So.2d 241: `What the legislators must have intended, it seems to us (since they did not repeal the basic prohibition against such contracts as void as against the public policy of the state), was to protect the investment of those employers who afford special training of a substantial nature to their employees, and to encourage them to do so."
Our review of the record reveals that all of the training expenses claimed by plaintiff were paid in connection with sales and training meetings and breaking in Mr. Graves when he was a new employee. These are not the kinds of expenses contemplated by R.S. 23:921, as interpreted in the Orkin case, supra. Rather they appear to be normal training and administrative expenses, *702 such as would be expended in the training of any employee. They are not sufficient to support a non-competition agreement in an employment contract.
Plaintiff further argues that, by soliciting the business of plaintiff's customers while still in plaintiff's employ, defendant "breached his fiduciary and legal duty to plaintiff, requiring that he be enjoined from competing or disclosing confidential information."
Although it is clear that much confidential information was furnished to defendant by plaintiff during his employment, there is nothing in the record to indicate that defendant disclosed it to others or utilized it himself. Defendant did, while still in plaintiff's employ, tell plaintiff's customers that he was going in business for himself, and that "if they wanted to, they could switch over to me and my program."
In the recent case of National Safe Corporation v. Benedict and Myrick, Inc., 371 So.2d 792 (La.1979), the court said:
"Article 1901 of the Civil Code requires good faith performance of all agreements. A principle of implied obligations in contracts is also stated in Article 1903 of the Code in these words: `The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect.' The effect of equity on implied obligations is expressed in Article 1964 in these terms: `Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.' Insofar as pertinent here, the `Equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us....' La. Civil Code art. 1965."
Assuming that defendant's conduct while in plaintiff's employ amounted to such a breach of contract, the relief to which plaintiff might be entitled is governed by Articles 1926 through 1928 of the Civil Code which provide:
"Art. 1926. On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section.
"Art. 1927. In ordinary cases, the breach of such a contract entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing the contract, he may be constrained to a specific performance by means prescribed in the laws which regulate the practice of the courts.
"Art. 1928. The obligee may require that any thing which has been done in violation of a contract, may be undone, if the nature of the cause will permit, and that things be restored to the situation in which they were before the act complained of was done, and the court may order this to be effected by its officers, or authorize the injured party to do it himself at the expense of the other, and may also add damages, if the justice of the case require it."
Although the injunctive relief sought by plaintiff might be authorized by the foregoing provisions, we are of the opinion that it would not be appropriate in this case. The injury suffered by plaintiff can probably be compensated by money damages, and a grant of the injunctive relief prayed for herein would result in de facto enforcement of the non-competition agreement, which, as noted above, is contrary to the public policy of the state. We find the authorities relied on by plaintiff to be factually inapposite.
The judgment appealed from is affirmed, at plaintiff's cost.
AFFIRMED.