CLARKCO CONTRACTORS, INC., Granite State Insurance Company, and New Hampshire Insurance Co.

v.

TEXAS EASTERN GAS PIPELINE COMPANY, A DIVISION OF TEXAS EASTERN TRANSMISSION CORPORATION.

Civ. A. No. 85–7–A.

United States District Court,
M.D. Louisiana.

July 11, 1985.

Felix R. Weill, Watson, Blanche, Wilson & Posner, Baton Rouge, La., for plaintiffs.

H. Alston Johnson, III, Docia L. Dalby, Phelps, Dunbar, Marks, Claverie & Sims, Baton Rouge, La., for defendant.

JOHN V. PARKER, Chief Judge.

The following motions are before the court; all have been briefed and orally argued:

(1) The motion of defendant, Texas Eastern Gas Pipeline Company, a Division of Texas Eastern Transmission Corporation (Texas Eastern), to reconsider the denial of a motion to transfer venue;

(2) The motion of plaintiffs, Clarkco Contractors, Inc., Granite State Insurance Company, and New Hampshire Insurance Company (Clarkco), for summary judgment;

(3) The motion of defendant, Texas Eastern, for summary judgment on its counterclaim.

On March 20, 1985, the court denied Texas Eastern's motion to transfer this action to the United States District Court for the Southern District of Texas. The court is now convinced that the minute entry ruling dated March 20, 1985 contains factual errors and that it is legally correct only up to a point. Accordingly, that minute entry is hereby vacated.

The ultimate issue to be resolved in this diversity action is whether the indemnity provisions in a pipeline contract between Texas Eastern, a major natural gas transmission company, and Clarkco, its pipeline contractor, may be enforced. Texas Eastern has tendered to Clarkco the defense of a number of death and personal injury actions which have been filed in this court against Texas Eastern alleging its negligence or fault in connection with a pipeline explosion and fire which occurred in West Feliciana Parish, Louisiana, on or about November 25, 1984. Clarkco was then performing work at the site of the explosion under its contract with Texas Eastern.

The contract contains an indemnity clause in favor of Texas Eastern, "from any and all loss ... in any manner arising from, connected with, or related to the work ... excluding, ... loss ... caused by the sole negligence" of Texas Eastern. The contract also has a choice of forum provision (the courts of Harris County, Texas), as well as a choice of applicable law provision (Texas), thus setting up the conflicts of law issues here considered.

A few days before Clarkco and its insurers initiated this action in this district, Texas Eastern filed suit in the Harris County state court against Clarkco demanding that the indemnity agreement be enforced as to the actions pending in this district. Subsequently, the insurers were added as parties defendant in the Texas action and the action was removed to the Southern District of Texas. The action in Texas and the action in this court involve identical parties and issues.

Texas Eastern seeks to enforce the choice of forum provision and asks that the action be transferred to the Southern District of Texas under 28 U.S.C. § 1406(a) as having been filed in the wrong venue, or under 28 U.S.C. § 1404(a) for the convenience of parties and witnesses.

Federal jurisdiction here, as well as in the Southern District of Texas, is predicated upon diversity of citizenship. Although as a federal court sitting in Louisiana, this court must apply the conflict of law rules that a Louisiana court would use in determining the choice of law issue, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), we apply federal, not state law in the first instance, because two acts of the Congress have been called into play, §§ 1406 and 1404. See *D'Antuono v. CCH Computax Systems, Inc.*, 570 F.Supp. 708 (D.R.I.1983) and authorities there cited. The Supreme Court in its decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) held that a forum selection clause is "prima facie valid and should

be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10, 92 S.Ct. at 1913. Although the *Bremen* dealt with admiralty matters, it has been regularly applied to all actions in federal court. *In re Fireman's Fund Ins. Companies, Inc.*, 588 F.2d 93 (5th Cir.1979) (action under the Miller Act, 40 U.S.C. § 270b); *The Plum Tree, Inc. v. Stockment*, 488 F.2d 754 (3d Cir.1973) (diversity action); *D'Antuono v. CCH Computax Systems, Inc.*, 570 F.Supp. 708 (D.R.I.1983) (diversity action); *Hoffman v. Burroughs Corp.*, 571 F.Supp. 545 (N.D.Tex.1982) (diversity action); *Quick Erectors, Inc. v. Seattle Bronze Corp.*, 524 F.Supp. 351 (E.D. Mo.1981) (diversity action); *Cutter v. Scott & Fetzer Co.*, 510 F.Supp. 905 (E.D.Wis. 1981) (diversity action). It has been consistently held that a federal court may decline to enforce a forum selection clause if enforcement would contravene a strong public policy of the forum state. See e.g. *Hoffman v. Burroughs Corp.*, 571 F.Supp. 545 (N.D.Tex.1982) and authorities there cited and discussed.

Thus, if Clarkco can show that enforcing the forum selection clause in this contract would contravene a strong Louisiana public policy, enforcement would be unreasonable and under the teaching of *Bremen*, supra, that provision should not be enforced.

Resolution of the choice of forum issue requires consideration of the choice of law provision of the contract because Clarkco claims that the Louisiana Oil Field Indemnity Act, LSA–R.S. 9:2780, applies to this contract. That act declares that as a matter of Louisiana policy, certain contractual indemnity provisions contained in contracts in the petroleum industry are declared null and void. Texas has adopted a similar statute but the parties note that there are important differences in detail between the two statutes and that the Texas statute would apparently permit enforcement of indemnity provisions which indemnify the indemnitee against his own negligence. Clarkco claims that the Louisiana statute clearly applies to this contract and that this

court should decline to enforce the choice of forum as well as the choice of law provisions and should declare the indemnity provisions null. Texas Eastern argues that the choice provisions were consented to by knowledgeable representatives of business corporations, neither of which is a citizen of Louisiana, Clarkco being a Mississippi citizen, and Texas Eastern, a Delaware corporation, has its principal place of business in Texas, that this is a multi-state contract with the work to be performed in Louisiana and Mississippi on a pipeline that traverses many states, that there is no evidence of overreaching or coercion or fraud and that Clarkco has failed to carry its "heavy burden" of demonstrating unreasonableness of enforcing contractural provisions which have been freely entered into.

The conflicts between the views of the parties as to the conflicts of laws issues are many. Both seem to agree, however, that Louisiana, despite the provisions of Article 10 of the Louisiana Civil Code, has wholeheartedly embraced the Restatement (Second) of Conflicts of Laws (1969). That Article in pertinent part provides

> The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.

> But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect.

Some recent federal decisions applying Louisiana law have reached that same conclusion, some more confidently than others. See e.g. *Burbank v. Ford Motor Co.*, 703 F.2d 865 (5th Cir.1983) ("Louisiana courts have indicated their intention to follow § 187 of the Restatement ...") i.d. at 866; *Delhomme Industries, Inc. v. Houston Beechcraft*, 669 F.2d 1049 (5th Cir.1982) ("... [S]ome recent Louisiana cases, as well as federal cases applying Louisiana law, have followed the Restatement (Second), although others have followed the traditional rule of lex loci contractus") i.d. at 1057; *Lee v. Hunt*, 631 F.2d 1171 (5th Cir.1980) ("Unfortunately, *Jagers [versus Royal Indemnity Co.*, 276 S.2d 309 (La. 1973)] is far from clear") i.d. at 1175 and ("... [W]e conclude ... that the current approach to the choice of law in Louisiana is that embodied in the Restatement ...") i.d. at 1176.

The decision of the Supreme Court of Louisiana in *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973) is certainly a significant conflicts of law case, marking a departure from prior Louisiana jurisprudence applying the law of the place of the tort. *Jagers* expressly overruled *Johnson v. St. Paul Mercury Insurance Co.*, 256 La. 289, 236 So.2d 216 (1970), a case which had expressly reaffirmed that Louisiana would apply the law of the place of the tort. In overruling *Johnson*, the Supreme Court did cite Section 6 of the Restatement (Second) Conflict of Laws (1969) but concluded that *Jagers* presented a false conflicts situation in which only one state actually had an interest. Barely a month later, the Supreme Court in *Sullivan v. Hardware Mutual Casualty Co.*, 278 S.2d 30 (La.1973) confirmed that, "In *Jagers* we abandoned the rigid rule of lex loci delicti ..." (278 So.2d at 31) and the court proceeded to perform an interest analysis in that tort case, although the decision makes no reference to the Restatement.

Whether the Supreme Court of Louisiana intended its departure from the lex loci delicti rule in tort cases to also signal an end to the lex loci contractus rule in contract cases remains to be seen. Although some intermediate Louisiana appellate courts have so construed *Jagers*[1], the Supreme Court has considered only one case

---

1. See e.g. *Davis v. Humble Oil & Refining Co.*, 283 So.2d 783, 789 (La.App. 1st Cir.1973) original opinion; *Sutton v. Langley*, 330 So.2d 321 (La.App. 2d Cir.1976) writs denied 332 So.2d 805, 820, 333 So.2d 242 (La.1976), "As *Jagers* ... evinced willingness to abandon rigid application of the *lex loci* dilicti rule ... it must also have signified the end of rigid application of the lex loci contractus rule ..." (330 So.2d at 327); *Wickham v. Prudential Insurance Company of America*, 366 So.2d 951, 954 (La.App. 1st Cir. 1979); *Succession of Dunham*, 393 So.2d 438, 444 (La.App. 1st Cir.1980), affirmed in part, reversed in part, 408 So.2d 888 (La.1981).

involving a contract conflict of laws issue since the decision in *Jagers*. In *Succession of Dunham*, 408 So.2d 888 (La.1981), the court carefully avoided approval of the language of the Court of Appeal (which had utilized an interest analysis approach) by noting that all parties agreed that Louisiana law was applicable and that the law of the competing state would produce the same result, and the court then cited the Restatement Section 258 in dicta, 408 So.2d at 894–895. Recognizing that in a civilian jurisdiction such as Louisiana, it is risky business to rely overly much upon extensions of judicial decisions as stating the applicable law [2], particularly where, as here, Article 10 of the Civil Code provides a statutory basis for the law, Judge Randall's observation in *Lee v. Hunt*, 631 F.2d 1171, 1176 (5th Cir.1980), "*Jagers* is far from clear" seems appropriate.

Fortunately, we are not required by this case to determine whether Louisiana has adopted the Restatement for all conflict of laws issues. There is a choice of law stipulation in the contract before the court and Louisiana will enforce such a stipulation unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying refusal to enforce them. *Associated Press v. Toledo Investments, Inc.*, 389 So.2d 752, 754 (La.App. 3d Cir.1980); *ADR v. Graves*, 374 So.2d 699, 700–701 (La.App. 1st Cir.1979) writ denied

377 So.2d 843 (La.1979); *Davis v. Humble Oil & Refining Co.*, 283 So.2d 783, 794 (La.App. 1st Cir.1973) on rehearing. This view is certainly consistent with Louisiana's longstanding view that parties have the utmost freedom to contract [3] and the binding effect of contracts [4]. Moreover, this view is not inconsistent with Article 10 of the Civil Code, the second paragraph of which provides, "But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect." Section 187(2) of the Restatement (Second) Conflicts of Laws (1969) provides in more detail that a choice of law provision will be enforced unless:

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

The Louisiana statute, LSA–R.S. 9:2780, specifically declares that certain types of indemnity agreements are "null and void and against public policy." No violence is done to Article 10 or to *Jagers* or any of its progeny, state or federal, by concluding that a Louisiana court would not enforce

---

**2.** For example, *Johnson v. St. Paul Mercury Ins. Co.*, 256 La. 289, 236 So.2d 216 (1970), while distaining the doctrine of *stare decisis* did recognize the doctrine of *jurisprudence constante*. After citing a long line of Louisiana cases stretching over a seventy year period applying the lex loci delicti doctrine as the "established rule," the court noted: "Fundamental and elementary principles recognize that certainty and constancy of the law are indispensable to orderly social intercourse, a sound economic climate and a stable government." 236 So.2d at 218. Exactly three years later *Johnson* was expressly overruled by *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973).

Louisiana looks first to statutory law. See e.g. *Ardoin v. Hartford Acc. & Indem. Co.*, 360 So.2d 1331 (La.1978): "In deciding the issue before us the lower courts did not follow the process of referring first to the code and other legislative sources but treated language from a judicial opinion as the primary source of law.

This is an indication that the position of the decided case as an illustration of past experience and the theory of the individualization of decision have not been properly understood by our jurists in many instances." 360 So.2d at 1334. See *Tate, Techniques of Judicial Interpretation in Louisiana*, 22 La.Law Review 727 (1962). Louisiana has no legislative conflict of laws rule in tort cases. It may be important to bear in mind that the Restatement (Second) Conflicts of Laws (1969) has not been adopted by the Louisiana Legislature as a part of the Civil Code; Article 10 is a part of the Code.

**3.** Civil Code Article 1764, "All things that are not forbidden by law, may legally become the subject of, or the motive for contracts, ..."

**4.** Civil Code Article 1901, "Agreements legally entered into have the effect of laws on those who have formed them...."

the indemnity provision of any contract to be wholly or partly performed in Louisiana if the contract is subject to that statute. It is really unnecessary to determine whether a Louisiana court would perform the complete analysis incorporated in § 187 of the Restatement[5]; suffice it to say, that LSA–R.S. 9:2780 represents a fundamental Louisiana policy and the indemnity provisions of the Texas Eastern-Clarkco contract would not be enforced by a Louisiana court if that statute is applicable to the contract. Having said that, it becomes clear that the only way to determine whether, "There is jurisprudential or statutory law to the contrary or strong public policy considerations" justify refusal to honor this provision,[6] is to determine whether the statute applies to this agreement.

Thus we embark upon the necessary task of determining whether LSA–R.S. 9:2780 applies to this contract. The statute reads in pertinent part as follows:

### § 2780. Certain indemnification agreements invalid

A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from ·death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

C. The term "agreement," as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or trans-

---

**5.** Although the Restatement was cited and discussed extensively in the original opinion in *Davis v. Humble Oil & Refining Co.,* 283 So.2d 783, 787–90 (La.App. 1st Cir.1973), no such reference is made in the opinion on rehearing where the court simply noted:

> Ordinarily, where a contract is entered into and one of the parties thereto endeavors to enforce a right claimed to have arisen under the contract, the party is bound by each provision of contract unless there is jurisprudential or statutory law to the contrary or strong public policy considerations justifying refusal to honor the contract as written. Id. at 794.

There the court enforced a contractual stipulation to apply the laws of the state of New York to a pension plan despite the fact that the employee had performed all of his service in Louisiana. No reference was made to the Restatement in *Associated Press v. Toledo Investments,*

*Inc.,* 389 So.2d 752 (La.App. 3d Cir.1980) where the court declined to honor the constructual choice of New York law where that law would violate Louisiana's strong public policy against awarding any damages except interest for violation of a contract to pay money. Similarly, in *ADR v. Graves,* 374 So.2d 699 (La.App. 1st Cir.) writ denied 377 So.2d 843 (La.1979), the court made no reference to the Restatement in declining to honor a North Carolina choice of law which would violate Louisiana's strong public policy against employee-employer non-competition agreements. See also *Fine v. Property Damages Appraisers, Inc.,* 393 F.Supp. 1304 (E.D.La. 1975), where the court also declined to enforce a choice of law provision that would violate the policy against non-competition agreements.

**6.** *Davis v. Humble Oil & Refining Co.,* 283 So.2d 783, 794 (La.App. 1st Cir.1973) on rehearing.

portation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

Both sides agree that this law is not "clear and free from all ambiguity" so the provisions of Article 13 of the Code do not apply [7]. It is apparent then that the mandate of Article 18 must be followed: "The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it."

The "cause" which induced the Louisiana Legislature to enact the statute is found in Subsection A, an inequity, "contained in some agreements *pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state.*" Clarkco claims that Subsection C of the statute defines the term "agreement" to include not only wells for oil, gas, or water and drilling for minerals, but also "transportation of oil, gas, or water." Thus, Clarkco argues that since Texas Eastern is admittedly transporting natural gas in its extensive pipeline system, it is engaged in the "transportation of ... gas" and, since this contract involves repair work on that transportation system, the contract is subject to the statutory provi-

sion. Texas Eastern, on the other hand, argues that the reach of the statute should be confined to that which was intended by the Legislature and that Subsection C incorporates only transportation of oil, gas, or water in connection with wells for those substances or drilling for minerals and, says Texas Eastern, since it is not involved with any well or with any drilling for minerals, the statute has no application to this contract.

It is obvious that the words of this statute cannot be applied literally in every respect; for example, the term "oil" means "any greasy substance that does not dissolve in water, but can be dissolved in ether ... Oils are classified as animal, mineral, or vegetable...." The World Book Encyclopedia, 1971 Edition, Volume 14, Verbo, "oil." The term "gas" is defined as "one of three forms of matter," the other two being solids and liquids. The World Book Encyclopedia, 1971 Edition, Volume 8, Verbo "gas." Surely the Legislature by its phrase "oil, gas, or water" did not intend to include contracts relating to such materials as vegetable oils and shortening and all gases known to man such as air, nitrogen, oxygen, etc. Clearly, in the context of this statute, which relates to wells for oil, gas, or water, and drilling for minerals, the Legislature intended to restrict these broad, all encompassing words to oil, more particularly petroleum and its products, and *natural* gas, a fuel.

This court freely acknowledges that the Louisiana Legislature is at liberty to define terms in its statutes in any way that it desires and, if it intends the word "black" in a particular statute to mean "white," then for purposes of that statute, so be it. The question here, is whether the Louisiana Legislature intended this anti-indemnity statute to include contracts pertaining to natural gas transmission pipelines when the contract does not pertain to "wells for oil, gas, or water, or drilling for minerals."

Subsection C of the statute defines "agreement" as "any agreement ... con-

---

7. Civil Code Article 13, "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."

cerning any operations related to the exploration, development, production, or *transportation of oil, gas, or water*, or drilling for minerals ... including but not limited to drilling [here follows a long list of other well drilling activities] ..., or, otherwise rendering services ... in connection with any well drilled ..., or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral ..." (Emphasis supplied). A literal application of the words "transportation of oil, gas, or water" would include every train with tank cars of crude oil, refined products or natural gas, every ship carrying any such product into or out of a Louisiana port, every barge load of those products on the Mississippi, the Intercoastal Waterway or other navigable streams, and every truck load of such products upon the highways, even bottled water being hauled to communities with bad tasting water, such as New Orleans. Since the Legislature has consistently used the words *contracts pertaining to wells for oil, gas, or water, or drilling for minerals*, I am persuaded that the Legislature intended to include only transportation contracts pertaining to wells or drilling for minerals.

The Legislature was not concerned about transportation of these products except in connection with wells or drilling and the phrase "transportation of oil, gas, or water" should be restricted to transportation of those substances in connection with agreements pertaining to "wells for oil, gas, or water, or drilling for minerals." This contract, which relates to work to be performed upon an interstate natural gas transmission pipeline, is not an agreement "pertaining to wells, for oil, gas, or water, or drilling for minerals" and the statute does not apply to it.

Because enforcement of the stipulated choice of law provision will not violate any fundamental Louisiana policy, the agreement of the parties should be honored, *Davis v. Humble Oil & Refining Co.*, 283 So.2d 783 (La.App. 1st Cir.1973) on rehearing, and the choice of forum provision is not unreasonable and should also be honored. *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). It is unnecessary to pass upon the other pending motions or the other contentions of the parties.

The motion to reconsider the motion to transfer is hereby GRANTED and this action will be transferred under 28 U.S.C. § 1406(a) to the United States District Court for the Southern District of Texas.